1  Squire Patton Boggs (US) LLP
   Karol K. Denniston (CA Bar # 141667)
2  555 California Street, Suite 550
   San Francisco, California 94104
3  Telephone: (415) 954-0200
   Facsimile: (415) 393-9887
4  karol.denniston@squirepb.com

5  Kelly Singer (admitted pro hac vice)
   2325 E. Camelback Road, Suite 700
6  Phoenix, Arizona 85016
   Telephone: 602.528.4000
7  Facsimile: 602.253.8129
   kelly.singer@squirepb.com

8

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | |
|---|---|
| In re: | Case No. 23-30421 (DM) |
| | Chapter 11, Subchapter V |
| Captain Corporation | **SHANGHAI COMMERCIAL BANK'S OBJECTION TO DEBTOR'S DESIGNATION AS A SUBCHAPTER V SMALL BUSINESS DEBTOR** |
| Debtor. | Date: September 29, 2023<br>Time: 10:00 a.m. (PT)<br>Via video/teleconference |

**TO: THE HONORABLE DENNIS MONTALI, U.S. BANKRUPTCY JUDGE, THE DEBTOR AND ALL OTHER INTERESTED PARTIES**:

In *this* case, we didn't fall "Through the Looking Glass." We instead ended up in The Princess Bride (1987):

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Vizzini: INCONCEIVABLE!*

*Inigo Montoya: You keep using that word. I do not think it means what you think it means.*

~*The Princess Bride (1987)*

The Debtor keeps calling itself a business. It is something of a delusional fantasy that owning and living in a residential piece of real estate is a business.[1] To wit, **the California public records demonstrate that the Debtor no longer owns its only asset, the personal residence of its 100% owner. Junior lienholders foreclosed on the residence before the bankruptcy.**

Shanghai Commercial Bank Limited ("SCB") objects to the Debtor's designation as a Subchapter V debtor under 11 U.S.C. § 1182. This Objection is supported by the entire record before the Court, the transcript of the Debtor's § 341 creditors' meeting, the *Declaration of Kelly Singer in Support of Shanghai Commercial Bank's Objection to Debtor's Designation as a Subchapter V Small Business Debtor* (the "Declaration") filed contemporaneously with this Objection, and the following points and authorities.

## FACTUAL ALLEGATIONS

### The Bankruptcy

1. On June 28, 2023, the Debtor filed a voluntary Chapter 11 petition and elected treatment as a Subchapter V case under the provisions of the Small Business Reorganization Act of 2019 ("SBRA"). Gina Klump was appointed as Subchapter V trustee (the "Trustee"). [DE 14].

---

[1] Dr. Phillip Barbay: …now, notwithstanding Mr. Mellon's input. The next question for us is where to build our factory? Thornton Mellon: How 'bout fantasyland? ~Back To School (1986). Recall that Mellon (a successful businessman brilliantly played by Rodney Dangerfield) ripped apart Professor Barbay's business and business plan during a class lecture. Mellon's wisdom is apropos here: Like Professor Barbay, the Debtor cannot call itself a business where a business has never existed.

2. As of the petition date, the Debtor listed two assets: the residence located at 30 Falkirk Lane, Hillsborough, California 94010 (the "Residence"); and $16.00 in a bank account. [DE 1].

3. The Debtor lists only three creditors with its petition: A minor secured tax claim against the Residence in the amount of $26,680.00; a senior secured claim against the Residence held by SCB in the approximate amount of $2,170,000.00;[2] and a junior secured claim against the Residence held by Val-Chris Investments on behalf of certain individuals[3] in the approximate amount of $3,021,877.00 (the "Junior Lienholder").[4] The Schedules fail to disclose the nonjudicial foreclosure by the Junior Lienholder.

**Dr. Wong Created the Debtor for the Purpose of Owning Her Personal Residence**

4. Dr. Shirlin Wong, or a living trust to which she is the 100% beneficiary, is the 100% owner of the Debtor.[5] The Debtor was created approximately 20 years ago for the sole purpose of holding the Residence for Dr. Wong and her spouse's use as a personal residence. In fact, the only property that the Debtor has ever owned is the Residence.[6] Since Dr. Wong and her spouse have lived at the Residence, no business has ever been conducted there, and no attempt appears to have been made to sell the Residence.[7]

5. During that time, the Debtor admits that it never executed a written lease or collected rent from Dr. Wong and her spouse. The Debtor is not a party to any contracts concerning

---

[2] SCB's amounts are subject to the continual accrual of interest, costs, and fees as provided under the governing loan documents. Prior to the filing of this Objection, SCB filed a Proof of Claim for a total of $2,352,816.22 as of September 1, 2023.

[3] Donald K. Reitzfeld, an unmarried man, as to 19.48% interest, Daroll Laverne Frewing and Dolores Fern Frewing, Trustees or the Survivor of them of the Frewing Family Trust dated August 12, 1998, as to 18.52% interest, Provident Trust Group FBO Donald Reitzfeld IRA, as to 17.56% interest; NVS Investments, LLC, a California Limited Liability Company, as to 12.97% interest, Benjamin Schwan, a married man as his sole and separate property, as to 7.41% interest; Bruce Rado, Trustee of the Bruce E. Rado Living Trust dated May 14, 2007, as to 7.41% interest; John Sager and Julie Sager, Trustees of the Sager Family Trust dated October 1, 2013 as to 5.55% interest; Schwartz Enterprises Inc., a California Corporation, as to 5.55% interest, and Craig S. Dodson, Trustee of the Craig S. Dodson Trust dated April 25, 2013 as to 5.55% Interest as Tenants in Common.

[4] *See* [Statement and Schedules, pp. 13-14 at Docket No. 1].

[5] *See* Debtor's Pre-Status Report Conference, at 1.

[6] [July 25, 341 Tr. at 53:10-14], attached as Exhibit 1 to the Declaration.

[7] [Id. at 51:2-53:17, 71: 1-20, 87:5-17, 89:1-20; 104:12-20].

Case: 23-30421  Doc# 35  Filed: 09/06/23  Entered: 09/06/23 16:14:24  Page 3 of 11
1097009300\9\AMERICAS

occupancy, maintenance, management, or use of the Residence.[8] The utilities are paid directly by Dr. Wong.[9]

6. The Debtor has never had any income,[10] and mortgage payments for the Residence are either paid by Dr. Wong or an affiliated entity.[11]

7. The Debtor's utter lack of commercial or business activity is further proven by its monthly operating report filed on August 21, 2023.[12] The Debtor's operating report is all zeros. **Zero** income. **Zero** cash receipts. **Zero** receivables. **Zero** employees. **Zero** projected cash receipts and disbursements for the next month. **Zero** projected net cash flow for the next month. The Debtor now has $2.00 in its DIP account (down $14.00 since the petition date).[13] The Debtor has **zero** operations.

**The Pre-Bankruptcy Foreclosure Action**

8. The public records for the State of California show that the Debtor does not own the Residence. The Junior Lienholder foreclosed on the Residence on May 17, 2023, and recorded a Notice of Default in the Official Records of San Mateo, California.[14] The resulting Trustee's Deed Upon Sale was recorded with the Clerk-Recorder in the County of San Mateo on July 7, 2023.[15] Accordingly, the public records reflect that title to the Residence has been transferred to the Junior Lienholder, subject to SCB's senior lien.

**The Debtor Was Never a Business Even When It Owned the Residence**

9. The Debtor never engaged in any commercial or business activity even when it owned the Residence, as confirmed by Dr. Wong's testimony as the Debtor's representative at the § 341 creditors meeting (the "341 Meeting").

---

[8] [Id. at 72:13-19, 77:18-78:2, 80:4-17].
[9] [Aug. 7, 341 Tr. at 24:5-9], attached as Exhibit 2 to the Declaration.
[10] [July 25, 341 Tr. at 87:5-17].
[11] [Aug. 7, 341 Tr. at 32:3-35:13]. Dr. Wong could not explain exactly how payments were made for the mortgage, but she is certain that either she or an affiliate provides the funds. [Id.]
[12] [Docket No. 31].
[13] The Debtor's bank charged a $14.00 service fee. Id.
[14] See Trustee's Deed Upon Sale, attached as Exhibit 3 to the Declaration.
[15] Id.

10. Dr. Wong freely admits the Debtor does not engage in any business. When asked by the US Trustee to "describe the business of the debtor," Dr. Wong responded that "[t]here is no business . . . it's just a place that, you know, I live."[16] Dr. Wong further admits that the Debtor did not use the property to generate income,[17] had no employees,[18] and that no entity conducted business on the Residence.[19] Dr. Wong testified no other purpose exists for the Residence other than residential:

> Q. [MR. CLOYD] Okay. And then this – this will just be a follow up question – and this may – this is just confirmation that is – is there any other purpose of the – the property at 30 Falkirk Lane other than residential?
>
> A. [DR. WONG] No. I don't believe so.[20]

11. Dr. Wong freely admits the Debtor does not engage in any commercial or business activities. When the US Trustee asked whether Dr. Wong was familiar with the filings in the case or the underlying documents relied upon, she was unable to respond.[21] When the US Trustee asked about her title with the Debtor, Dr. Wong did not know her title.[22] When asked whether the Debtor opened a new debtor-in-possession bank account, Dr. Wong responded that she was "not clear."[23] When asked whether the Debtor maintained any auto insurance, workers' compensation insurance, or any other insurance, Dr. Wong could not remember.[24] When asked whether the Debtor maintained any financial statements such as a balance sheet or a statement of cash flows, Dr. Wong responded that she does not remember and needed to check.[25] When asked what business licenses

---

[16] [July 25, 341 Tr. at 51:18-52:2].
[17] [Id. at 87:5-11].
[18] [Id. at 26:13-15].
[19] [Id. at 89:1-14].
[20] [Id. at 89:15-20].
[21] [Id. at 42:12-21; 45:19-46:6].
[22] [Id. at 9:10-10:7].
[23] [Id. at 21:16-22:5].
[24] [Id. at 25:17-27:15].
[25] [Id. at 27:20-28:16].

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

were required to operate, Dr. Wong stated that she needed to "double-check."[26] When asked whether the Debtor's correct name was on the petition, Dr. Wong equivocated with "I believe so."[27] Dr. Wong could not describe with any specificity who writes checks for the mortgages and claimed confusion when asked the source of funds for mortgage payments.[28]

12. When asked how the Debtor applied the nearly $3 million loan from the Junior Lienholder, Dr. Wong responded that she could not recall, and guessed "general expenses."[29]

13. Dr. Wong was incapable of answering directly whether the Debtor had any employees in the past,[30] and whether she reviewed or agreed with the accuracy of filings made with the court.[31]

14. Due to Dr. Wong's complete lack of knowledge as the Debtor's representative, the US Trustee continued the 341 Meeting and asked Dr. Wong to familiarize herself with the Debtor's financials.[32]

15. Two weeks later at the continued 341 Meeting, Dr. Wong was still unable to answer questions about the Debtor's alleged operations. Dr. Wong attempted to revise her prior testimony at the continued meeting. Contrary to her initial testimony, Dr. Wong asserted that the Debtor was engaged in the business of holding property. However, when the Trustee asked what licenses the Debtor possessed to run that kind of business, Dr. Wong could only answer that the Debtor had "[w]hatever . . . license . . . we need to obtain to . . . [be] in the business of holding the property."[33]

16. When asked how the Debtor paid for the mortgage, Dr. Wong could not or would not identify the entities that paid on behalf of, or transferred money to, the Debtor to pay the mortgage. Dr. Wong would not, or could not, explain how such entities earned their income.[34] The

---

[26] [Id. at 37:14-38:6].
[27] [Id. at 39:1-5].
[28] [Id. at 90:6-91:10].
[29] [Id. at 100:2-13].
[30] [Id. at 75:19-22].
[31] [Id. at 40:3-49:13].
[32] [Id. at 111:9-112:2].
[33] [Aug. 7, 341 Tr. at 16:13-17:4; 18:4-18].
[34] [Id. at 32:3-34:12; 34:20-35:14].

Case: 23-30421  Doc# 35  Filed: 09/06/23  Entered: 09/06/23 16:14:24  Page 6 of 11
1097009300\9\AMERICAS

primary entity that might have paid was stated to be Prime Pacific Global Management (an affiliate of the Debtor). This company paid the Debtor's retainer to bankruptcy counsel.[35]

17. As evidenced by Dr. Wong's testimony, the Debtor does not and has never engaged in any commercial or business activity.

**The Subchapter V Plan**

18. On August 22, 2023, the Debtor filed its Subchapter V plan (the "Plan").[36] Unsurprisingly, the Plan fails to state how or when the Debtor intends to regain ownership of the Residence. The Plan also states that Dr. Wong will cure arrearages owed to SCB and the Junior Lienholder within four (4) months of the effective date, but it does not say how Dr. Wong intends to do this. It is also not surprising the Debtor asserts that SCB is not impaired under the Plan despite the fact that the Debtor proposes, among other things, that SCB (i) wait four months for payment of past-due amounts, and (ii) maintain the junior mortgage held by the Junior Lienholder when SCB's loan documents specifically prohibit junior liens.[37]

19. SCB recognizes that there will be a hearing on the Plan to address plan objections, including this point. But questions surrounding feasibility loom large, as does the impossibility of a plan that finances property the Debtor no longer owns.

**ARGUMENT**

20. The Debtor bears the burden of proving it is eligible to proceed in Subchapter V. *In re RS Air, LLC*, 638 B.R 403, 414 (B.A.P. 9th Cir. 2022).[38] A "small business debtor" is defined in § 1182(1) as "a person engaged in commercial or business activities . . . that has aggregate, noncontingent, liquidated, secured and unsecured debts as of the date of the filing of the petition . . .[of] not more than $7,500,000 . . . not less than 50% of which arose from the commercial or

---

[35] [Id. at 77:17-78:2]. Dr. Wong also stated that she does not believe that Prime has any sort of written agreement with the Debtor. [Id. at 80:4-13].
[36] [Docket No. 32].
[37] [Adjustable Rate Note, Section 12, attached as Exhibit 4 to the Declaration].
[38] Under Federal Rule of Bankruptcy Procedure 1020(b), the United States Trustee or any party in interest may object to a debtor's designation as a small business case within 30 days of the conclusion of the debtor's meeting of creditors. The 341 Meeting concluded on August 7, 2023 and this objection is timely filed.

- 7 -

business activities of the debtor." 11 U.S.C. § 1182(1). The definition of "debtor" under § 1182(1), therefore, has two relevant requirements. First, the debtor must be a person or entity "engaged in commercial or business activities." Second, the debtor must fall under the debt limit and at least 50% of its debt must arise "from the commercial or business activities of the debtor." Neither element is met here.

### The Debtor No Longer Owns the Residence

21. The Debtor is not and cannot be a small business debtor because it no longer owns the Residence. On May 17, 2023, the Junior Lienholder nonjudicially foreclosed on the Residence. Notwithstanding any of the other issues regarding the Debtor's Subchapter V election, the Debtor cannot be engaged in any business holding property it no longer owns.

22. The Debtor asserts that the Junior Lienholder's foreclosure was inappropriate under new residential foreclosure laws in California.[39] The fact that the Debtor relies on a statute intended for a homeowner's residence merely confirms there is no business. Moreover, the Debtor has taken no steps to set aside the foreclosure.

### The Debtor Did Not Engage in Commercial or Business Activities

23. Setting aside the nonjudicial foreclosure, the Debtor does not meet the requirement of being "engaged in commercial or business activities" when the property's sole purpose is a residence.

24. "Courts have generally held that the scope of commercial or business activities is very broad and apply a 'totality of the circumstances' standard." *In re RS Air, LLC*, 638 B.R. at 410-11. Whether a debtor is engaged in such activities is determined as of the time of the filing of the petition. *Id*. "The Bankruptcy Code has not defined the phrase [commercial or business activities] and case law is sparse." *Id*. at 413. Courts generally view commercial to mean "commerce," and have defined business as "commercial or mercantile activity engaged in as a

---

[39] *See, e.g.*, Debtor's Pre-Status Conference Report Pursuant To 11 U.S.C. § 1188(c), at Docket No. 27.

means of commerce." *Id*. at 409-412 (collecting cases); *see e.g., In re Ikalowych,* 629 B.R. 261, 276 (Bankr. D. Col. 2021) (defining "commercial or business activity" as "any private sector actions related to buying, selling, financing, or using goods, property, or services, undertaken for the purposes of earning income.").

25. While there are some non-operating entities that have been found to be eligible for Subchapter V relief, these entities were engaged in some type of business activity on the day of the petition other than the bankruptcy itself. *See In re RS Air, LLC*, 638 B.R. at 406, 411 (historically provided flight service and flew fragile technology prototypes and acquired and sold fractional interests in aircrafts, and on the day of the petition engaging in litigation, paying its aircraft fees, and filing its tax returns and paying taxes); *In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520-LVV, 2021 WL 3668037, at *1 (Bankr. M.D. Fla. July 23, 2021) (defunct contractor that specialized in stucco installations for residential homes, and on the day of the petition was maintaining bank accounts, working with insurance adjusters and defense counsel to resolve claims, and selling assets); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 234-35 (Bankr. S.D. Tex. 2021) (formerly operated a waste heat facility, and on the day of the petition pursued litigation against a third party, sought to collect on outstanding accounts receivable, engaged in the selling of an asset, and preserved asset value).

26. Further, at least one court has indicated when a debtor exists to merely own a piece of real estate, with no other indicators of a business, then that debtor will not qualify for Subchapter V. *In re Quadruple D Trust*, 639 B.R. 204, 214 (Bankr. D. Col. 2022) (stating that it had "serious doubts" that a spendthrift trust, which only owned real estate, had no receivables nor income, and only had a bank account with $100 in it, would qualify as a Subchapter V debtor).

27. Here, as discussed above in Paragraphs 9-17, the Debtor cannot show by a totality of the circumstances that it engages or has ever engaged in any commercial or business activities. On the second day of the 341 Meeting, counsel to the Debtor stated that the Debtor may start charging rent either this month or next month. [Aug. 7 341 Tr., at 30:17-21]. However, since

whether a debtor is engaged in commercial or business activities is determined as of the petition date, such future plans to charge Dr. Wong rent does not change the analysis. *See In re RS Air, LLC*, 638 B.R. at 612.

**None of the Debtor's Debts Arise from Commercial or Business Activities**

28. The Debtor cannot establish that at least 50% of its debts arise from commercial or business activities, because there are no activities.

29. A recent decision from the Ninth Circuit illustrates what it means for a debt to arise from commercial or business activities. In *In re Bennion*, Case No. 22-00102-NGH, 2022 WL 3021675 (Bankr. D. Idaho July 29, 2022), one of the two debtors ran a business under which he performed tree-felling and land-clearing work. That debtor performed certain tree-felling work for his family, and during that work incurred an injury that resulted in medical bills. The medical bills comprised over 90% of the combined debtors' debts. The debtors argued that such bills arose from commercial or business activity, because they were incurred during the one debtor's line of business. In analyzing whether the medical bills qualified as such debt, the court focused on the "purpose" rather than the "form" of the transaction. Notably, the court found that the debtor's work was done for a "personal or family purpose," at "no charge," and under no contract. The court thus found that the medical bills were not commercial or business in nature. *In re Bennion*, 2022 WL 3021675, at *3.

30. Here, the only liabilities the Debtor has (a secured tax claim and two mortgages) arose from or are related to the Debtor's personal residence. Such liabilities are entirely personal and household in nature and were incurred for a personal purpose. Like *Bennion*, none of the Debtor's debts as of the petition date arise from any commercial or business activity.

31. For the reasons outlined herein, the Debtor does not meet the Subchapter V requirements.

## RELIEF REQUESTED

32. For these reasons set forth above, the Debtor does not and cannot qualify as a Subchapter V small business debtor. SCB respectfully requests that the Court (i) deny the Debtor's designation as a Subchapter V small business debtor, and (ii) grant such other and further relief the Court deems just and equitable, including, among other relief, entering an order to show cause on why this case should not be dismissed. SCB reserves the right to supplement this Objection as more information is made available.

Dated: September 6, 2023

Squire Patton Boggs (US) LLP

By: *s/ Karol K. Denniston*

Karol K. Denniston
Attorney for Shanghai Commercial Bank, Limited.