Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor Captain Corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CAPTAIN CORPORATION,<br><br>Debtor and Debtor-in-Possession. | Case No. 23-30421<br><br>Chapter 11, Subchapter V<br><br>**DECLARATION OF CHERYL TSAO IN SUPPORT OF MOTION TO APPROVE POST-PETITION RESIDENTIAL LEASE AGREEMENT**<br><br>Hearing Date:<br>Date: October 13, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Dennis Montali<br>Place: Tele/Videoconference |

I, Cheryl Tsao, declare as follows:

1. I am the Chief Financial Officer of Captain Corporation ("Captain"). I also reside, with Dr. Shirlin Wong, at 30 Falkirk Lane, Hillsborough, California 94010 (the "Property"). Except as otherwise indicated herein, the facts set forth in this declaration are based upon my personal knowledge and my review of relevant documents. If called upon to testify, I could and would competently testify to the facts set forth in this declaration.

2. This declaration is submitted in support of the *Motion to Approve Post-Petition Residential Lease Agreement* (the "Motion).

3. Captain is in the business of real estate investment with its primary asset being

1

the Property. The Property is a 7,800 square foot, single-family residence with 7 bedrooms and 8 baths. The latest appraisal of the Property, obtained by secured creditor Val-Chris Investments, Inc. and dated September 9, 2021, valued the Property at $10,000,000.

4. As noted above, I live in the Property with my spouse, Dr. Wong. We pay all utilities and maintenance expenses related to the Property, either directly or through related entities. There is, however, no written lease between us and Captain. Funds necessary to cover the mortgage and tax payments for the Property have been advanced to Captain or paid directly, from time to time, by either Dr. Wong and myself or another related entity.

5. In light of the bankruptcy filing, the parties wish to enter into a standard written lease to formalize the existing informal relationship.

6. I have consulted with a realtor to determine the appropriate rental rate and standard terms for the Property.

7. A true and correct copy of the proposed lease for the Property (the "Lease") is attached as **Exhibit A**. The Lease has a 1-year term and monthly rental rate of $14,500.00. The Lease also requires a $14,500.00 security deposit. These amounts reflect current market rates for comparable properties. The Lease also memorializes the obligations of Dr. Wong and myself to directly pay all utility, maintenance and repair costs. The Lease also contains additional standard residential lease terms to protect Captain's interests in the Property.

8. I believe the Lease is in the best interests of all parties. The Lease will benefit Captain's bankruptcy estate by providing a steady and even cash flow to the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing it true and correct. This declaration is executed on September 19, 2023.

_____
Cheryl Tsao

# Exhibit A

# RESIDENTIAL LEASE AGREEMENT

THIS RESIDENTIAL LEASE AGREEMENT ("Lease") is made and entered into on August 1, 2023, by and between Captain Corporation, a California corporation ("Landlord") and Dr. Shirlin Wong and Cheryl Tsao ("Tenant").

For and in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

**1. PROPERTY.** Landlord owns the property and improvements located at 30 Falkirk Lane, Hillsborough, California 94010 ("Premises"). Landlord desires to lease the Premises to Tenant, and Tenant desires to lease the Premises from Landlord, upon the terms and conditions contained herein.

**2. TERM.** The term of this rental shall begin on August 1, 2023 and end on July 31, 2024.

**3. RENT.** Tenant agrees to pay to Landlord as rent for the Premises the amount of $14,500.00 each month in advance on the 1st day of each month ("Rent") at 1870 El Camino Real Suite 100, CA 94010, or, at Landlord's option, to such other party or at such other place as Landlord may from time to time designate in writing. If the Term does not start on the 1st day of the month or end on the last day of a month, the first and last month's rent will be prorated accordingly.

**4. SECURITY DEPOSIT.** Before the commencement of the Term, Tenant shall pay to Landlord a security deposit of $14,500.00, ("Security Deposit"). Landlord may retain such amounts of the Security Deposit as allowed by law including, but not limited to, Tenant's obligation to restore, replace or return personal property. Landlord shall, within the time period allotted by law, refund any balance after such deductions to Tenant after Tenant has vacated the Premises. Tenant shall not be deemed to have vacated the Premises for purposes of this paragraph until: (a) Tenant returns to Landlord **ALL** keys to the Premises, and (b) Tenant has surrendered the Premises to Landlord free and empty of all persons claiming any right to possess the Premises. Tenant may **NOT** apply the Security Deposit, nor any portion thereof, to the last month's rent. If any portion of the Security Deposit is applied by Landlord to any obligations of Tenant at any time during the tenancy Tenant must, upon 5 days written notice, reinstate the Security Deposit to its full original amount.

**5. LATE CHARGES.** Rent is due on the 1st of each month. If any or all of the rent is not received by the 10th day of the month, Tenant will be charged with a late charge equal to five percent (5%) of the outstanding Rent until full rental payment is received.

1

**6.     USE OF PROPERTY.** Tenant shall only use the Premises as a residence. The Premises shall not be used to carry on any type of business or trade without the prior written consent of the Landlord. Tenant will comply with all laws, rules, ordinances, statutes, and orders regarding the use of the Premises.

**7.     AS IS CONDITION/FURNISHINGS.** The Tenant has inspected the property, the fixtures, the grounds, building, furnishings, and improvements and acknowledges that the Premises is in good and acceptable condition and are habitable. Tenant acknowledges that its acceptance of the Premises shall be conclusively deemed to have accepted the Premises in its "**AS IS**" condition.

**8     ASSIGNMENT.** Under this Lease, Tenant shall not assign or sublease any share in this Lease. All sublease arrangements must be made with the prior written consent of the Landlord, which consent shall not be unreasonably withheld. Any assignment or sublease without the Landlord's written prior consent shall, at Landlord's option, terminate this Lease.

**9.     RIGHT OF ENTRY.** Tenant agrees to make the Premises available to Landlord or Landlord's agents for the purposes of inspection, making repairs or improvements, or to supply agreed services or show the property to prospective buyers or tenants, or in case of emergency. Except in case of emergency, Landlord shall give Tenant 48 hours notice of intent to enter.

**10.    ALTERATIONS AND IMPROVEMENTS.** Tenant shall make no alterations to the building or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed, or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Lease.

**11.    UTILITIES.** Tenant shall pay directly for all utilities, services and charges provided to the Premises **EXCEPT** for those listed as follows: **NONE**. Tenant agrees to comply with any energy or water conservation programs implemented by Landlord. Nothing contained herein prevents Landlord from passing through to Tenant utility costs as provided by law.

**12.    MAINTENANCE, REPAIR, AND RULES.** Tenant will, at Tenant's sole expense, keep and maintain the Premises in a good, clean and sanitary condition and repair during the term of this Lease and any renewal thereof. Tenant shall be responsible to make all repairs to the Premises, Furnishings, fixtures, appliances, and equipment therein that may have been damaged by Tenant's misuse, waste or neglect, or that of the Tenant's family or visitors. Tenant agrees

that no painting will be done on or about the Premises without the prior written consent of Landlord. Tenant shall promptly notify Landlord of any damage, defect or destruction of the Premises or in the event of the failure of any of the furnishings, appliances or equipment. Landlord will use their best efforts to repair or replace any such damaged or defective areas, furnishings, appliances or equipment.

**13.     STORAGE:** No additional storage space outside of Premises is authorized, permitted or provided under this Lease.

**14.     PARKING**: Tenant may use the secured garage at the Premises and the driveway in front of the garage for parking.  Tenant agrees to park in the garage and on the driveway at its own risk and Landlord shall not be liable for any damages, thefts, break-ins, and losses to Tenant's motor vehicles and personal properties in such motor vehicles.  Tenant agrees to use the parking space exclusively for the parking of motor vehicles; excluding trailers of any kind, boats, campers, buses, or trucks larger than a one-ton pickup.

**15.     PETS.** Tenant has the right to keep any pets on the Premises without the prior written consent of the Landlord.

**16.     QUIET ENJOYMENT.** Upon payment of all the sums referred to herein as being payable by Tenant and Tenant's performance of all Tenant's agreements contained herein and Tenant's observance of all rules and regulations, Tenant shall and may peacefully and quietly have, hold, and enjoy said Premises for the term hereof.

**17.     INDEMNIFICATION.**  Except as provided by law, Landlord shall not be liable for any injury to Tenant, Tenant's family, guests, or employees or to any person entering the Premises and shall not be liable for any damage to the building in which the Premises is located, or to the structure or equipment of the structure in which the Premises is located, and Tenant hereby agrees to indemnify, defend, and hold Landlord harmless from any and all claims or assertions of every kind and nature.

**18.     NUISANCE:**  Tenant shall not commit, nor permit to be committed, any waste or nuisance upon or about the Premises.  Tenant shall not disturb other neighboring residents in adjoining properties to the Premises.  Three complaints in any six-month period shall constitute a substantial interference with neighboring resident's comfort, safety and enjoyment and shall be deemed a just cause for eviction.  Tenant shall also be liable for the actions of their guests and/or invitees.

**19.     TERMINATION:** After the expiration of the original term of this Lease, Landlord or Tenant may terminate the tenancy, in accordance with applicable law, by giving at least 30 days

prior written notice to the other party. Upon termination, Tenant shall completely vacate the Premises and any parking or storage areas; give written notice of Tenant's forwarding address; and deliver all keys, furnishings, if any, and Premises to Landlord in the same condition as received excepting normal wear and tear.

**20.     HOLDOVER**. Tenant has no right to retain possession of the Premises or any part thereof after the expiration or earlier termination of the Lease ("Holdover Period"). In the event that Tenant holds over, then the Rent shall be increased to 150% of the Rent applicable immediately preceding the expiration or termination. Nothing contained herein shall be construed as consent by Landlord to any holding over by Tenant.

**21.     ABANDONMENT.** If Tenant abandons the Premises of any personal property during the term of this Lease, Landlord may at is option enter the Premises by any legal means without liability to Tenant and may at Landlord's option terminate the Lease. Abandonment is defined as the absence of the Tenants from the Premises for at least 60 consecutive days without notice to Landlord.

**22.     ATTORNEYS' FEES.** If Landlord is required to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of Rent or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

**23.     COMPLIANCE WITH LAW.**  Tenant agrees that during the term of the Lease, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the Premises, or the use or occupancy thereof.

**24.     SEVERABILITY.** If any provision of this Lease or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Lease nor the application of the provision to other persons, entities, or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**25.     BINDING EFFECT**. The covenants, obligations, and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

**26.     MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Lease shall not be modified, changed, altered, or amended in any way except through a written amendment signed by all of the parties hereto.

**27. NOTICE.** Any notice required or permitted under this Lease or under the law shall be delivered to the following address:

<u>Landlord</u>:
Captain Corporation
1870 El Camino Real, Suite 100
Burlingame, CA 94010
Attention: Cheryl Sing

<u>Tenant</u>:
Dr. Shirlin Wong
30 Falkirk Lane
Hillsborough, CA 94010

**28. LEAD DISCLOSURE:** Many homes and apartments built before 1978 have paint that contains lead (called lead-based paint). Lead from paint chips and dust can pose serious health hazards if not taken care of properly. The law requires that tenants and lessees receive certain information before renting pre-1978 housing. By signing this Agreement, Tenant represents and agrees that Landlord has provided Tenant with such information, including, but not limited to, the EPA booklet entitled "*Protect Your Family From Lead In Your Home*" and the "*Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards*". Any known lead-based paint or lead hazards at the Premises, if any, are hereby, disclosed as follows: **<u>Landlord has not actual knowledge of lead-based paint and/or lead-based paint hazards in the Premises</u>**.

**29. SMOKING POLICY.** Smoking, including vaping and recreation use of cannabis, on the Premises is prohibited.

**30. ADDITIONAL TERMS.** Tenant acknowledges that Landlord may make future improvements to the Premises and the property where the Premises is located including without limitation exterior repairs/paintings, structural retrofitting, and constructing of accessory dwelling units on the back of the property. Landlord may, but is not obligated to, offer concession to Tenant for the compensation of usage to the Premises affected by such improvement works, repairs, or constructions.

**31. ENTIRE AGREEMENT.** This constitutes the entire Lease between the parties and supersedes any prior understanding or representation of any kind preceding the date of this Lease. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified in writing and must be signed by both Landlord and Tenant.

[Balance of Page Intentionally Left Blank; Signature Pages Follow]

Case: 23-30421    Doc# 40    Filed: 09/19/23    Entered: 09/19/23 13:37:20    Page 8 of 9

**IN WITNESS WHEREOF,** the parties have caused this Residential Lease Agreement to be executed in multiple originals as of the undersigned date.

**LANDLORD**:

CAPTAIN CORPORATION
a California corporation

By: _____
Name: Shirlin Wong
Title: President
Date: July 31, 2023


**TENANT**:

Cheryl Tsao

By: _____
Date: July 31, 2023

6