WRIGHT, FINLAY & ZAK, LLP
Arnold L. Graff, Esq. SBN 269170
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 608-9142
agraff@wrightlegal.net

Attorneys for Movant, DONALD K. REITZFELD; DAROLL LAVERNE FREWING AND DOLORES FERN FREWING, TRUSTEES OR THE SURVIVOR OF THEM OF THE FREWING FAMILY TRUST DATED AUGUST 12, 1998; PROVIDENT TRUST GROUP FBO DONALD REITZFELD IRA; NVS INVESTMENTS, LLC; BENJAMIN SCHWAN; BRUCE RADO, TRUSTEE OF THE BRUCE E. RADO LIVING TRUST DATED MAY 14, 2007; JOHN SAGER AND JULIE SAGER, TRUSTEES OF THE SAGER FAMILY TRUST DATED OCTOBER 1, 2013; SCHWARTZ ENTERPRISES INC.; AND CRAIG S. DODSON, TRUSTEE OF THE CRAIG S. DODSON TRUST DATED APRIL 25, 2013, AS BENEFICIARY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 23-30421-DM |
| CAPTAIN CORPORATION, | Chapter: 11 |
| Debtor. | Ref. No. ALG-1 |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR COMFORT ORDER CONFIRMING NO STAY VIOLATION OR ALTERNATIVELY, FOR AN ORDER GRANTING RETROACTIVE STAY RELIEF TO VALIDATE PRIOR FORECLOSURE SALE PURSUANT TO 11 U.S.C. § 362(d)(1) (REAL PROPERTY)** |
| | Date: October 12, 2023<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>450 Golden Avenue<br>San Francisco, CA 94102<br>**Via Tele/Videoconference** |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL OF RECORD, AND ALL OTHER PARTIES IN INTEREST:**

DONALD K. REITZFELD; DAROLL LAVERNE FREWING AND DOLORES FERN FREWING, TRUSTEES OR THE SURVIVOR OF THEM OF THE FREWING FAMILY TRUST DATED AUGUST 12, 1998; PROVIDENT TRUST GROUP FBO DONALD REITZFELD IRA; NVS INVESTMENTS, LLC; BENJAMIN SCHWAN; BRUCE RADO, TRUSTEE OF THE BRUCE E. RADO LIVING TRUST DATED MAY 14, 2007; JOHN SAGER AND JULIE SAGER, TRUSTEES OF THE SAGER FAMILY TRUST DATED OCTOBER 1, 2013; SCHWARTZ ENTERPRISES INC.; AND CRAIG S. DODSON, TRUSTEE OF THE CRAIG S. DODSON TRUST DATED APRIL 25, 2013, AS BENEFICIARY (hereinafter "Movant" or "Creditor") submits the following memorandum of points and authorities in support of its Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Motion").

## I. INTRODUCTION

This Motion is being brought pursuant to § 362(d)(1) for cause, based on Movant's acquisition of the Property at a nonjudicial foreclosure sale prior to the commencement of the case, and Movant's recordation of the Trustee's Deed Upon Sale ("TDUS") within the period provided by state law for perfection. As such, Movant respectfully requests confirmation via court order that the automatic stay of 11 U.S.C. § 362 was not violated when Movant recorded the TDUS pursuant to amended California Civil Code § 2924h(c), with respect to the real property located at 30 Falkirk Lane, Hillsborough, CA, 94010 (the "Property").

Alternatively, Movant requests retroactive stay relief to annul the stay and validate the recording of the Trustee's Deed Upon Sale ("TDUS") on July 7, 2023, because neither Movant nor the foreclosure trustee was aware of the bankruptcy case file (the "Bankruptcy") when the TDUS was recorded, and because the Bankruptcy has not been filed in good faith and Movant will be greatly prejudiced if the sale is not validated, as Debtor has no desire to sell the Property and has shown no ability to reinstate and maintain Movant's loan. Movant is also not adequately

protected by a sufficient equity cushion, based on the value of the Property alleged by Debtor in its schedules signed and filed under penalty of perjury. In fact, when the estimated costs of sale are considered, there is no equity in the Property at all. Moreover, the senior lienholder seeks to commence foreclosure proceedings based on Debtor's failure to make multiple payments on the first position deed of trust. As Debtor has no income and no intention to sell the Property, and because Debtor has been unable to show Movant any ability to reinstate Movant's and the senior lienholder's secured claim, either inside or outside of bankruptcy, Movant is not adequately protected, as both the secured claims continue to grow rapidly. Indeed, the amount of arrears on Movant's Claim alone are approximately $355,341.35.

Debtor has also elected to proceed as a small business debtor despite admittedly never being engaged in any commercial or business activity, as confirmed by its managing member and 100% owner at the 341(a) meeting. Further, Debtor has confirmed that it is generating no income, has never had any employees, has never had any entity conducting business on the Property. Debtor even admitted at the 341(a) that no other purpose exists for the Property other than as a residence for the 100% owner and her spouse, despite Movant's business purpose loan being approved based on Debtor's assurances that the funds would be used exclusively to pay off a second lien and to support Debtor's business operations and overhead.

Debtor also did not disclose Movant's foreclosure sale in its schedules or statement of financial affairs, and never took any action to directly notify Movant of the Instant Bankruptcy aside from filing the petition and listing Movant's servicer and foreclosure trustee on the creditor matrix coversheet. (Dckt. 1). Moreover, both the foreclosure trustee and Movant did not receive any notice of the Instant Bankruptcy until after TDUS was recorded on July 7, 2023. Shortly after receiving notice of the Bankruptcy, Movant immediately began fact-gathering, and began discussions with Debtor's bankruptcy counsel shortly thereafter about a potential resolution. Debtor's Sub V election has been opposed by the senior lienholder and Debtor has proposed a Sub V plan that is not patently confirmable, as Debtor does not qualify as a Sub V Debtor, and even if it did, the proposed Plan is not even remotely feasible.

/././

As the Parties have been unable to reach an informal resolution to date, Movant has filed this Motion for a comfort order and/or an order terminating the automatic stay retroactively to validate the July 7, 2023 recording of the TDUS.

## II. STATEMENT OF FACTS

### A. LOAN HISTORY

On or about September 15, 2021, Captain Corporation ("Debtor") obtained a business purpose loan in the original amount of $2,700,000.00 (the "Loan") from Val-Chris Investments, Inc. (the "Val-Chris"). The promissory note, which has been specially endorsed and made payment to Movant, requires thirty-five (35) fully amortized payments of $24,526.73 each until October 15, 2024, when the loan will mature and the total remaining loan balance will become fully due and owing (the "Note"). A true and correct copy of the Note is attached as **Exhibit A** to the *Declaration of Chris Boulter in Support of Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) (Real Property)* ("Boulter Dec.") being filed concurrently with the Motion.

Repayment of the Note was secured by Lender's interest in the real property commonly known as 30 Falkirk Lane, Hillsborough, CA, 94010 (the "Subject Property" or "Property") through a deed of trust ("Deed of Trust"), recorded against the Property on September 24, 2021, in the San Mateo County Recorder's Office, as document number 2021-136990. (See Boulter Dec., **Exhibit B**).

All beneficial interest in the Deed of Trust the Note was subsequently assigned to Movant (See Boulter Dec., **Exhibit C**).

On or about September 9, 2021, Debtor and its President, Shirlin Wong ("Ms. Wong") each signed a Certificate of Business Purpose of Loan (the "Business Purpose Certificate"), which certified that the loan proceeds would be used only for the business purpose of paying off the existing second mortgage and to support Debtor's alleged business operations/overhead. (See Boulter Dec., **Exhibit D**).

/././

/././

Debtor subsequently defaulted on the terms of the Loan, which caused Movant to record a Notice of Default against the Property on or about December 15, 2022, listing a default of $83,696.36 as of December 14, 2022 (the "NOD") (See Boulter Dec., **Exhibit E**).

Due to Borrower's failure to cure the default, Movant then had a Notice of Sale recorded on April 10, 2023, which set an initial foreclosure sale date and reflected an updated default of $3,021,877.05 (the "NOS"). (See Boulter Dec., **Exhibit F**).

B.   **FORCLOSURE SALE**

Movant proceeded to foreclosure on May 17, 2023. A true and correct copy of the Trustee's Deed Upon Sale ("TDUS"). A true and correct copy of the TDUS is attached as **Exhibit E** to the *Declaration of Christopher Loria in Support of Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) (Real Property)* ("Loria Dec.") being filed concurrently with the Motion. (See also Boulter Dec., **Exhibit G**).

Due to a Notice of Intent to Bid received within 15 days of the foreclosure sale, Movant needed to wait the required statutory period before the TDUS could be recorded. Subsequently, the TDUS was recorded on July 7, 2023, after Movant waited the requisite period of time pursuant to Civil Code §2924m(c) and SB 1079 (See Loria Dec., ¶ 9). Neither Movant nor the foreclosure trustee received any notice or communications regarding any bankruptcy case filings affecting the Property until *after* the TDUS had been recorded. (See Loria Dec., ¶ 10; See also Boulter Dec., ¶ 12).

C.   **BANKRUPTCY**

On June 28, 2023, unbeknownst to Movant, Debtor filed a voluntary Chapter 11 petition and elected treatment as a Subchapter V case under the provisions of the Small Business Reorganization Act of 2019 ("SBRA") (Dckts. 1 & 14).

/./././

/./././

/./././

/./././

/./././

As of the petition date, Debtor listed only two assets: the Property and $16.00 in a bank account[1] (Dckt. 1). Debtor also listed only three (3) creditors in its petition, consisting of (1) a secured tax claim of $26,680.00; the senior deed of trust held against the Property by Shanghai Commercial Bank in the estimated sum of $2,170,000.00 (the "Senior Claim"), and Movant's junior secured claim in the estimated sum of $3,021,877.00 ("Movant's Claim") (See Dckt. 1).

Debtor also valued the Property at $6,000,000 as of the petition filing date. (*id*; Schedules A/B & D), whereas the senior lienholder's claim has grown to $2,452,816.23, as of September 14, 2023, while Movant's claim has grown to $3,054,406.03, as of September 21, 2021, for a minimum total of $5,533,902.29 in liens on the Property, which includes the scheduled San Mateo County pre-petition Tax Claim. (Boulter Dec., **Exhibits H & I**). The amount of arrears on Movant's loan are approximately $355,341.35. (Boulter Dec., ¶ 15).

Shirlin Wong ("Wong") is also listed as the 100% owner of the Debtor via a living trust in which Wong is the 100% beneficiary (Dckts. 1 & 27). However, Debtor's Schedules fail to disclose the nonjudicial foreclosure by Movant (*id*).

1. *341(a) Creditor's Meeting*

Debtor has also never engaged in any commercial or business activity, as confirmed by Wong's testimony at the Debtor's representative at the § 341 creditors meeting (the "341 Meeting") (Dckt. 36; **Exhibit 1;** July 25, 341 Tr. at 42:12-21; 45:19-46:6; 9:10-10:7; 21:16-22:5; 25:17-27:15 and 27:20-28:16). Wong freely admitted during her 341(a) that Debtor has no employees, and that no entity conducted business on the Property (*id.* at 51:18-52:2; 87:5-11; 26:13-15). Wong also testified no other purpose exists for the Property other than residential (*id.* at 89:15-20; 11).

Pursuant to Wong's own testimony, Debtor was apparently created approximately two decades ago for the sole purpose of holding the Property for Wong and her spouse's use as a personal residence, which is the only real property Wong has allegedly ever owned (See Dckt. 36; **Exhibit 1**; July 25, 341 Tr. at 53:10-14). Since Wong and her spouse have lived at the

---

[1] The amount in the checking account briefly dipped to $2.00 before a $500 deposit was made by the President of Debtor. (Dckts 31 & 43).

Residence, no business has ever been conducted there, and no attempt has ever been made to sell Property (*Id.* at 51:2-53:17, 71: 1-20, 87:5-17, 89:1-20; 104:12-20). During that time, Debtor admits that it never executed a written lease or collected rent from Wong and her spouse, as Debtor is not a party to any contracts concerning the occupancy, maintenance, management, or use of the Residence. (*Id.* at 72:13-19, 77:18-78:2, 80:4-17). And the utilities are paid directly by Wong. (See Dckt. 36; **Exhibit 2**; Aug. 7, 341 Tr. at 24:5-9).

The Debtor has never had any income, and mortgage payments for the Residence are either paid by Wong or an affiliated entity. (*id.* at 32:3-35:13[2]; Docket No. 31). In fact, both of Debtor's monthly operating reports filed in the Bankruptcy reflect no income, no cash receipts, and no projected cash receipts and disbursements for the next month (Dckts. 19 & 31).

2. *Chapter 11 Plan*

On August 22, 2023, the Debtor filed its Subchapter V plan (the "Plan"), which states that Debtor will retain the Property, but fails to how or when Debtor intends to regain ownership of the Property. Rather, the Plan states that Debtor will cure arrearages owed to Movant and the senior lienholder within four (4) months of the effective date, but it does not say how Debtor intends to do this, especially considering the massive defaults on both loans and Debtor's total lack of income. (See Dckt. 32).

3. *Objection to Subchapter V Designation*

On September 6, 2023, the senior lienholder filed a formal objection to Debtor's designation as a Subchapter V Small Business Debtor, because is not, and never has engaged in any commercial or business activity (Dckt. 35). Movant is filing a joinder to said Objection concurrently with the Motion

4. *Motion for Authority to Enter Residential Lease Agreement*

On September 19, 2023, in response the senior lienholder's objection, Debtor filed a motion for authority to enter into a Residential Lease Agreement (the "Lease") with Wong and

---

[2] Wong could not explain exactly how payments were made for the mortgage, but she is certain that either she or an affiliate provides the funds. [*Id.*]

7
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 23-30421    Doc# 44-2    Filed: 09/22/23    Entered: 09/22/23 15:38:22    Page 7 of 20

her spouse Cheryl Tsao, whereby Wong and her spouse would pay Debtor monthly rent to live in the Property (Dckt. 39).

Counsel for Movant and counsel for Debtor have had discussions regarding a potential resolution with respect to the prior foreclosure sale and pending bankruptcy case, but as no formal agreement has been reached, Movant now proceed with this Relief Motion.

### III.  LEGAL ARGUMENT

**A.  CAUSE EXISTS TO FIND THAT THE PROPERTY WAS NOT PART OF DEBTOR'S BANKRUPTCY ESTATE UNDER SECTION 541 AND WAS NOT SUBJECT TO THE AUTOMATIC STAY, PURSUANT TO CIVIL CODE § 2924H(C) AS THE TDUS RELATES BACK TO THE DATE OF THE FORECLOSURE SALE**

A voluntary bankruptcy petition generally "operates as a stay, applicable to all entities of," inter alia, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Section 362(b)(3) provides that § 362(a) does not operate as a stay of any act to perfect an interest in property and does not violate the automatic stay to the extent that the trustee's right and powers are subject to such perfection under § 546(b). 11 U.S.C. § 362(b)(3).

Section 546(b), in turn "provides that a trustee's right to avoid a transfer pursuant to 11 U.S.C. §§ 544(a) or 549 is subject to any generally applicable law that permits perfection to relate back and to be effective against one who acquires rights in the property before the date of perfection." In re Stork, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997). "Put another way, a party's post-petition perfection of its interest in estate property will not violate the stay if state law allows that party's interest to be superior to the interest of any entity (such as a trustee acting as a hypothetical bona fide purchaser) who obtains its interest prior to the date that the act to perfect is performed." In re Richter, 525 B.R. 735, 755 (Bankr. C.D. Cal. 2015).

Generally, state law determines the property interests of parties. *Butner v. United States,* 440 U.S. 48 (1979). In California, an interest in real property is "perfected" when it is recorded with the county recorder. Cal. Civ. Code §§ 1213- 15. California's system of nonjudicial foreclosure is governed by a comprehensive scheme of statutes (California Civil Code §§ 2920-2923, 2924 et seq., amended by 2022 Cal. Legis. Serv. Ch. 642 (A.B. 1837) (WEST)). Until

recently, section 2924h(c) of the Civil Code provided that "the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day." Cal. Civ. Code § 2924h(c).

Pursuant to the 2019 California Senate Bill No. 1079 ("SB 1079"), California statutorily enlarged the grace period for recordation of the trustee's deed on sale under certain circumstances. See 2019 California S.B. No. 1079, California 2019-2020 Regular Session.[3] Aimed at giving families, renters, local governments, and housing nonprofits an opportunity to purchase foreclosed homes after a trustee's sale closes, the new legislation identified two categories of individuals and organizations authorized to participate in a trustee's sale: (1) "eligible tenant buyers" and (2) "eligible bidders."[4] See 2019 California S.B. No. 1079, California 2019-2020 Regular Session. Now, section 2924h(c) of the Civil Code provides that if an eligible tenant buyer or an eligible bidder submits a written notice of intent to bid within 15 days following the sale, a trustee's sale remains "final upon acceptance of the last and highest bid" and is perfected as of 8:00 a.m. on the actual date of the sale if the trustee's deed "is recorded within 60 calendar days after the sale, or the next business day following the 60th day if the county recorder in which the property is located is closed on the 60th day." Cal. Civ. Code § 2924h(c).[5]

---

[3] SB 1079, signed into law on September 28, 2020, amended the nonjudicial foreclosure process for single-family residences and incorporated additional changes to sections 2923 and 2924. See id. Effective on January 1, 2021, and amended on January 1, 2022 (AB175), under SB 1079 foreclosing parties are required to follow these new provisions prescribed in the amended bill for single-family residences. See id.

[4] A list of "eligible tenant buyers" and "eligible bidders" is contained in Civ. Code §§ 2924m(a)(2) and (a)(3), respectively.

[5] Under the amended California law, in order to purchase the property, an eligible tenant buyer or eligible bidder must deliver a written notice of intent to place a bid to the trustee "no more than 15 days after trustee's sale" and must submit a bid "no more than 45 days after the trustee's sale." Civ. Code §§ 2924f(b)(8)(A) and 2924m(c)(3)-(4). If the prospective owner occupant is the last and highest bidder at the trustee's sale, the sale is final. Civ. Code § 2924m(c)(2). Otherwise, an eligible tenant buyer may purchase the foreclosed property by matching the last and highest bid price placed at the auction. Civ. Code §§ 2924f(b)(8)A) and 2924m(c)(4). An eligible bidder must exceed it. Civ. Code §§ 2924f(b)(8)(A) and 2924m(c)(4).

Under the amended statute, if an eligible tenant buyer or eligible bidder provides notice of intent to submit a bid within 15 days after the sale, the trustee must wait to record the deed on sale to determine if an eligible bid is received. As a result, the statute extends the time for relation back of the recordation to 60 days. A trustee's sale is deemed perfected as of 8:00 a.m. on the actual date of sale if the trustee's deed is recorded within 60 days after the sale. If the foreclosure sale purchaser fails to record its deed within 60 days of the sale, the perfection will not relate back to the date of the sale.

Several decisions have considered the validity of a prepetition trustee's sale where recordation of the trustee's deed occurs post-petition, and have affirmed the validity of the sales. In the seminal case, *In re BebenseeWong, 248 B.R. 820* (9th Cir. BAP 2000), a creditor conducted a foreclosure sale before the debtor filed her bankruptcy case. Two days after the bankruptcy was filed, the trustee's deed on sale was recorded. The trustee's deed was recorded post-petition but within 15 days of the sale. The BAP affirmed the bankruptcy court's grant of relief from the automatic stay. The BAP held that the relation back effect of Civil Code § 2924h(c) operated to perfect the sale on the actual date of the sale notwithstanding the post-petition recordation of the deed and therefore did not violate the stay. (*See id.* at 822-23 (sections 362(b)(3) and 546(b) specifically permit post-petition perfection of interests in property when "generally applicable law ... permits perfection to relate back and to be effective against one who acquires rights in the property before the date of perfection" quoting *In re Stork, 212 B.R.* at 971); *see also In re Garner, 208 B.R. 700* (S.D. Cal. 1996) ("The plain language of § 2924h(c) provides that the sale is final when the highest and last bid is accepted. Thus ... the foreclosure sale was final when the bankruptcy petition was filed."). These decisions reason that no violation of the automatic stay occurs due to the "relation back" doctrine found in Civil Code § 2924h(c). Id., see also In re Engles, 193 B.R. 23, 27–28 (Bankr. S.D. Cal. 1996) (discussing history and purpose of § 2924h(c)). As the court in Engles made clear, the purpose of Civil Code § 2924h(c) is to ensure that on facts such as these, a debtor cannot avoid a trustee's sale by filing a bankruptcy petition after the trustee's sale but prior to the date the trustee's deed on sale is recorded. Id. Hence, the relation back effect of Civil Code § 2924h(c) operates to perfect the

trustee's sale on the actual date of sale. *In re Bebensee–Wong, 248 B.R. at 823*. If the creditor acts within the statutory grace period, the foreclosure sale is deemed perfected as of 8:00 a.m. on the sale date, notwithstanding the intervening bankruptcy petition. Id. Thus, the result should be the same for the expanded 60-day statutory grace period provided in the current version of Civil Code § 2924h(c). If the recording is done within the statutory grace period, the sale is perfected as of the sale date.

Considering the above, under Civil Code § 2924h(c), Movant's post-petition recordation of the TDUS relates back to the date of the foreclosure sale, and this Court should find that even though the TDUS was recorded on July 7, 2023, after this bankruptcy was filed, the transfer of title to the Property relates back to May 17, 2023 foreclosure sale. There was an intent to bid that triggered the 60-day relation back recording period, and the relation back effect of Civil Code § 2924h(c) operated to perfect the trustee's sale on the actual date of sale as it was recorded within the 60-day grace period. (Loria Dec, ¶ 9). Thus, Debtor had no interest in the Property at the time of filing of her petition, and Movant respectfully requests that this Court find that the Property was not part of the bankruptcy estate under section 541 and was not subject to the automatic stay.

**B. PURSUANT TO CIVIL CODE § 2924H(C), RELIEF FROM STAY SHOULD BE GRANTED UNDER SECTION 362(D)(1) BECAUSE MOVANT IS NOT ADEQUATELY PROTECTED**

11. U.S.C. § 362 states:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;[1]

The Ninth Circuit has found cause to grant relief from stay under Section 362(d)(1) when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, when a debtor has failed to make consistent and timely post-petition payments to his/her Movants, or

when the debtor is using bankruptcy as a means to delay payment or foreclosure.[2] A lack of adequate protection has further been found to exist when there is an insufficient equity cushion in the Property and/or if the value of the collateral is decreasing.[3] The Ninth Circuit has held that a 20% equity cushion is what is required for a Movant to be considered adequately protected for purposes of a motion for relief analysis.[4]

Here, once Movant recorded the TDUS, it took title to the Property. Because the foreclosure sale occurred nearly six (6) weeks before the Bankruptcy was filed, and because the TDUS was recorded within the required 60-day period, the recording dates back to 8 am on the date of the sale – on May 17, 2023 (Boulter Dec, **Exhibit G**). As a result, because Movant was the lawful owner of the Property as of the bankruptcy filing date, cause exists to grant Movant relief from the automatic stay under § 362(d)(1) to allow Movant to pursue its state court remedies to obtain possession of the Property, as Debtor has no interest in the Property.

**C. EVEN ASSUMING ARGUENDO THAT CIVIL CODE § 2924H(C) IS NOT APPLICABLE, CAUSE STILL EXISTS TO ANNUL THE AUTOMATIC STAY TO VALIDATE THE RECORDING OF THE TRUSTEE'S DEED RETROACTIVELY UNDER 362(D)(1)**

Section 362 of the Bankruptcy Code creates an automatic stay applicable to all entities that, in general, and with some specific exceptions, stays all acts to create, perfect, or enforce any lien against property of the estate and/or to obtain possession of property of the estate. Pursuant to well settled Ninth Circuit precedent, actions taken in violation of the automatic stay are void. See Schwartz v. United States (In re Schartz), 954 F.2d 569, 571 (9th Cir. 1992); see also Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1082 (9th Cir. 2000). However, the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay." 11 U.S.C. § 362(d) (emphasis added).

---

[1] 11 U.S.C. §362(d)(1)(Emphasis added).
[2] *In re Harlan*, 783 F.2d 839 (BAP 9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (BAP 9th Cir. 1985).
[3] See for e.g. *Pistole v. Mellor (In r Mellor)*, 734 F.2d 1396 (9th Cir. 1984).
[4] *Id.*

12
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY
Case: 23-30421   Doc# 44-2   Filed: 09/22/23   Entered: 09/22/23 15:38:22   Page 12 of 20

In deciding whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to examine the circumstances of a particular case and balance the equities of the creditor's position in comparison to that of the Appellant's. *Souang v. Fularon (In re Fularon)*, BAP No. 10-1428-JuHPa, 2011 Bankr. LEXIS 4335, 2011 ALA 4485202, at *3 (9th Cir. BAP July 11, 2011) (citing *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055). Under this approach, the bankruptcy court considers "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

In *Fjeldsted*, the BAP also identified twelve (12) additional factors that can be relevant in deciding whether retroactive annulment of the stay is justified. Although no one factor is dispositive, courts typically focus on two factors, including:

(1) whether the creditor was aware of the bankruptcy petition and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. Other factors courts consider include: (a) the number of filings; (b) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (c) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (d) the debtor's overall good faith (based upon the totality of the circumstances); (e) whether creditors knew of the stay, but nonetheless took action, thus compounding the problem; (f) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (g) the relative ease of restoring parties to the status quo ante; (h) the costs of annulment to debtors and creditors; (i) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (j) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (k) whether annulment of the stay will cause irreparable injury to the debtor; and (l) whether stay relief will promote judicial economy or other efficiencies. (*In re Fjeldsted* at 25.)

In the present case, Movant conducted a lawful foreclosure sale at a public auction on May 17, 2023 and after waiting the appropriate period under applicable state law, Movant recorded the TDUS on July 7, 2023, after the Bankruptcy had commenced (Loria Dec, ¶ 9). Thus, to the extent this court finds the recording of the TDUS to be a violation of the automatic stay, cause still exists under the totality of the circumstances to annul the stay and validate the recording of the TDUS retroactively, as discussed below:

### 1. **Movant was Not Aware that Bankruptcy Case Filing Affects the Property**

As to the first factor, neither Movant nor the foreclosure trustee was unaware of any bankruptcy filing affecting the Property when the TDUS was recorded.

The TDUS was recorded at 9:40 am on July 7, 2023, after Movant had waited the requisite period of time pursuant to Civil Code §2924m(c) and SB 1079. (See Loria Dec, ¶¶ 8-9; **Exhibit E**). No communications or written notice of the Bankruptcy were received by Movant or by the foreclosure trustee until after the TDUS was recorded. (See Loria Dec. ¶¶ 9-10; See also Boulter Dec, ¶ 12). As a result, neither Movant nor its agents were aware of the Bankruptcy when the TDUS was recorded. Debtor could have called or emailed Movant about the Bankruptcy before the recording, but did not so do. (*id*). As a result, this First Factor weighs heavily in favor of annulling the stay.

### 2. **Debtor has Engaged in Inequitable and Bad Faith Conduct, and Rescinding Sale will not only reward these bad acts but will be Highly Prejudicial to Movant**

#### a. *Debtor's Bad Faith Conduct*

This entire bankruptcy case reeks of bad faith. Debtor is seeking the benefits and protections afforded only to qualifying small business debtors under Chapter 11, Sub V, but Debtor's 100% owner and president admitted on the record at Debtor's 341(a) meeting that Debtor: (1) has never engaged in any commercial or business activity, (2) has never had any employees, (3) has never had an entity conduct business on the Property, (4) has no income or assets (aside from the Property) and is not producing any income (See Dckt. 36; **Exhibit 1**; July 25, 341 Tr. at 53:10-14. These revelations are particularly disturbing the fact that Wong and

Debtor certified that Movant's Loan would be used for business purposes only. (See Boulter Dec., **Exhibit D**).

Pursuant to Wong's own testimony, Debtor was created approximately two (2) decades ago for the sole purpose of holding the Property for Wong and her spouse's use as a personal residence, which is the only Property Wong has ever owned (See Dckt. 36; **Exhibit 1**; July 25, 341 Tr. at 53:10-14). Moreover, Debtor also admitted (via its President) that it has never executed any written lease or collected rent from Wong and her spouse, and Debtor is not a party to any contracts concerning the occupancy, maintenance, management, or use of the Residence. (*id.* at 72:13-19, 77:18-78:2, 80:4-17). And the utilities are paid directly by Wong. (See Dckt. 36; **Exhibit 2**; Aug. 7, 341 Tr. at 24:5-9).

Debtor has also proposed a Plan that states that Debtor will retain the Property, without explaining how or when Debtor intends to regain ownership of the Property post-foreclosure, or why Debtor failed to even list the prior foreclosure in its schedules and SOFA filed with this Cout under penalty of perjury (Dckt. 32). Debtor's Plan also does not even explain how Debtor intends to cure the substantial arrearages owed to Movant and to the senior lienholder within four (4) months of the effective date, especially considering the massive defaults involved. The amount of arrears on Movant's Claim alone are approximately $355,341.35 (Boulter Dec., ¶ 15). Thus, Debtor's total lack of income, and the uncertainty of when confirmation would even occur, if ever, shows the bad faith involved.

While Debtor recently filed a motion for authority to enter into a Residential Lease with Wong and her spouse (Dckt. 39), this is nothing more than performative art, form over substance just to try to game the bankruptcy code. Wong already admitted under penalty of perjury that there has been no business activities and she and her spouse have used the Property as their residence with no business purpose or activities for many years without paying any rent to any landlord. (Dckt. 36; **Exhibit 1;** July 25, 341 Tr. at 42:12-21; 45:19-46:6; 9:10-10:7; 21:16-22:5; 25:17-27:15 and 27:20-28:16). If such a sham Lease were approved hey would effectively be paying monthly rent to themselves for the purpose of trying to get bankruptcy benefits they are entitled to under the code. (Dckt. 39).

15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY
Case: 23-30421   Doc# 44-2   Filed: 09/22/23   Entered: 09/22/23 15:38:22   Page 15 of 20

Considering the above, the Bankruptcy is clearly a bad faith attempt by Debtor to try to prevent the recording of the TDUS from getting recorded, even though the foreclosure sale occurred nearly 6 weeks before the Bankruptcy commenced, Debtor never provided Movant with any notice of the bankruptcy before the TDUS was recorded, Debtor has no income or assets (aside from the foreclosed Property) and has improperly sought Sub V Debtor status despite not being eligible and has proposed a plan that is not even remotely feasible. Debtor did not even disclose the prior foreclosure sale in its schedules.

As such, because Debtor has engaged in an inequitable in filing this Chapter 11, Sub V bankruptcy case, this factor also weighs heavily in favor of annulling the stay.

### 3. Not Modifying and/or Annulling the Stay Will Be Highly Prejudicial to Movant

In the event the court finds that Civil Code § 2924h(c) does not apply, and that the stay should not be annulled, there will be much greater prejudice to Movant than to the Debtor. First, Debtor clearly cannot afford to keep the Property but also clearly has no interest in selling it. Debtor has massive defaults on two claims that were both secured by the Property pre-foreclosure. Yet Debtor has proposed a plan that is not definite or feasible, indicating that Debtor will find the money to reinstate both loans, despite Debtor not generating any income whatsoever, at some uncertain time in the future. (Dckt. 32). In short, the Plan does not even specify how or when these claims will be paid.

Moreover, Debtor has valued the Property, under penalty of perjury, in Debtor's schedules at the amount of $6,000,000.00. Based on this valuation and the liens secured by the Property, if Movant's sale were rescinded Movant would not be adequately protected by any equity whatsoever, once the 8% estimated costs of sale (approximately $480,000.00) are considered[6]. Further, the fact that Debtor's Plan is valuing the Property at 4 million more than

---

[6] Debtor valued the Property at just $6,000,000 as of the petition filing date (*id*), whereas the senior lienholder's claim has grown to $2,452,816.23 as of September 14, 2023, and Movant's claim has grown to $3,054,406.03, as of September 21, 2021, for a minimum total of $5,533,902.29 in liens on the Property, including the scheduled San Mateo County Tax Claim. (Boulter Dec, **Exhibits G & H**).

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 23-30421　Doc# 44-2　Filed: 09/22/23　Entered: 09/22/23 15:38:22　Page 16 of 20

the signed schedules filed under penalty of perjury, based on an old appraisal, is just more evidence of bad faith. (Dckt. 32).

By contrast, if annulment of the stay is not granted, Movant will be faced with the unwarranted hardship and extra cost of rescinding its foreclosure sale – despite the Bankruptcy being clearly filed in bad faith. The senior lienholder currently has a very large default and is preparing to proceed with its state law remedies as soon as possible. The amount of arrears on Movant's Claim alone are approximately $355,341.35 (Boulter Dec., ¶ 15). It would be inequitable and unfair to allow Debtor to undo all the work Movant has done when it was Debtor who waited many weeks after the foreclosure sale before filing the Bankruptcy, and it was Debtor who failed to directly notify Movant of the Instant Bankruptcy before the TDUS was duly recorded. (See Dckt 1, Schedules A/B & D; Loria Dec, ¶¶ 9-10; **Exhibits E;** See Boulter Dec, ¶¶ 12-13, **Exhibits G-I)**. Based upon the foregoing, this third factor also favors annulment of the automatic stay to validate the July 7, 2023 recording of the TDUS.

### 4. **Movant has Acted Reasonably Under the Circumstance**

Movant has also acted reasonably with respect to the Property and has not delayed in bringing this Motion. As stated repeatedly above, Movant did not receive notice of the Bankruptcy until the afternoon of July 7, 2023 (Boulter Dec, ¶ 12) and the foreclosure trustee did not become aware of the sale until the afternoon of July 10, 2023 (Loria Dec, ¶ 10). This Motion is being brought just over two months since that time, after Movant has had time to investigate and gather the facts regarding the foreclosure and the merits and prospects of Debtor's Bankruptcy. To determine whether there is any merit to the pending Bankruptcy, Movant's counsel had to attend both 341(a) meetings held in the Bankruptcy, which did not conclude until mid-August, and Movant's counsel also had to review the proposed Chapter 11 Plan, which was not filed until late August 2023. (*See* Dckt. 32). Movant has also discussed potential informal resolution options with Debtor, to see if a resolution could be reached without needing to expend more of this Court's valuable time and resources litigating a motion for relief via a contested matter. (Boulter Dec, ¶ 16) This Motion is also being filed in time to be heard before any confirmation issues. Thus, Movant did not act unreasonably in bringing this Motion

approximately two (2) months and a half months after Movant became aware of the Bankruptcy. (See Loria Dec, ¶¶ 9 & 10) (See Boulter Dec, ¶¶ 11-13, 16). By contrast, Debtor has not filed any motions regarding the issue, and did not even list the foreclosure in Debtor's Schedules. (Dckt. 1).

Moreover, the recording of the TDUS, and all other actions taken by Movant and/or its agents with respect to the Property have been performed pursuant to applicable state and federal laws, and under the good faith presumption and belief that there was no bankruptcy when the TDUS was recorded (See Loria Dec, ¶¶ 8-10).

As a result, because Movant has not sat on his rights and has acted reasonably under the circumstances, this factor also weighs in favor of annulling the stay and validating the prior sale, so the stay should be annulled to validate the recording of the TDUS, so that Movant can finally proceed with its state law rights and remedies.

**D. ASSUMING ARGUENDO THIS COURT FINDS A STAY IN PLACE AND DECLINES MOVANT'S REQUEST FOR RETROACTIVE AND BINDING IN REM STAY RELIEF, STAY RELIEF IS STILL WARRANTED PURSUANT TO 11 U.S.C. § 326(D)(1) BECAUSE (1) THE BANKRUPTCY CASE WAS NOT FILED IN GOOD FAITH, AND (2) PAYMENTS ARE NOT BEING MADE AND MOVANT IS NOT ADEQUATELY PROTECTED**

*1. Bankruptcy Was Filed in Bad Faith*

Relief from stay is appropriate under 11 U.S.C. § 362(d)(1) if a bankruptcy case was filed in bad faith. To prove "bad faith" on the part of the debtor, the moving party need only show that the instant bankruptcy was filed for an intention *other* than what is sanctioned by the Code *not* intentional abuse by the debtor, ill will or malicious conduct. See *In re Southern Calif. Sound Systems, Inc.* 69 BR 893, 901 (BC SD CA 1987). A true measure of bad faith uses the "totality of the circumstances test," which considers all facts leading up to the filing of the bankruptcy case. *Matter of Little Creek Develop. Co.*, 779 F2d 1068, 1072 (5th Cir. 1986). "The court can determine that a debtor filed a case in bad faith based on a pattern of conduct and may impute bad faith from the timing and circumstances of the filing." *In re Eardley*, No. BAPCC-08-1175

MOMKH, 2009 WL 7809924, at *6 (B.A.P. 9th Cir. May 11, 2009) (citing *Eisen v. Curry (In re Eisen),* 14 F.3d 469 (9th Cir.1994). *See also, In re Craighead*, 377 B.R. 648 (N.D.Cal., 2007).

Courts in California have expanded the scope of bad faith stay relief under Section 362(d)(4) to apply to cases filed by seemingly innocent debtors so long as the bankruptcy is Shown to be part of a larger scheme to hinder, defraud and delay the moving party through actions undertaken by the original borrower (See *In re 4th Street Investors, Inc.*, 474 B.R. 709 (Bankr. C.D. Cal. 2012).

Here, even if a stay exists that is not annulled, cause still exists to grant Movant relief from stay on bad faith grounds under Section 362(d)(1) for the reasons stated above.

### 2. *Movant is not Adequate Protected and Payments are Not Being Made*

11. U.S.C. § 362 states that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;[1]

The Ninth Circuit has found cause to grant relief from stay under Section 362(d)(1) when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, when a debtor has failed to make consistent and timely post-petition payments to his/her creditors, or when the debtor is using bankruptcy as a means to delay payment or foreclosure. *In re Harlan*, 783 F.2d 839 (BAP 9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (BAP 9th Cir. 1985).

Here, as was also stated above, Debtor is not making ongoing payments and greatly lacks the funds necessary to reinstate and maintain both Movant's loan and the senior lienholder's through the plan, which alone sufficient cause for this court to grant stay relief under *In Re Harlan* and *In Re Ellis*. (Dckts. 1 & 32; Boulter Dec, **Exhibits A & B)**. In short, Debtor has woefully insufficient income based on all the evidence provided to perform under the proposed Plan. Moreover, as explained above, once estimated costs of sale are considered, there is no equity in the Property whatsoever, based on Debtor's own valuation in its schedules

---

[1] 11 U.S.C. §362(d)(1)(Emphasis added).

(Dckt. 1; Schedules A/B & D). As a result, because Debtor cannot reinstate the loans (and refuses to sell the Property), so Debtor has resorted to this bad faith bankruptcy for which Debtor is not eligible and has proposed a Plan in which Debtor cannot comply, all while not making payments while continuing to enjoy possession and control of the Property.

Considering the above, in the unlikely event this Court finds a stay in effect, but does not find sufficient grounds to the annul the same, cause exists and Movant would respectfully requests that this Court grant it standard stay relief pursuant to 11 U.S.C. § 362(d)(1) on bad faith grounds and because Movant is not adequately protected.

**WHEREFORE**, cause exists to annul the automatic stay and validate the foreclosure sale, and Movant respectfully prays for an Order of this court:

1. That a comfort order be entered confirming that the recording of the TDUS did not violate the automatic stay;

2. Alternatively, that the automatic stay of 11 U.S.C. § 362 be annulled so that it shall have no force or effect upon Movant's recording its Trustee's Deed Upon Sale on July 7, 2023;

3. That the 14-day stay prescribed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived;

4. That the requested retroactive stay relief be binding and effective despite the conversion of this case to a case under any other chapter of Title 11 of the United States Code; and

5. That Movant be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: 09/22/2023

By:   */s/ Arnold L. Graff*
Arnold L. Graff, Esq.
Attorneys for Movant.