Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CAPTAIN CORPORATION,<br><br>Debtor and Debtor-in-Possession. | Case No. 23-30421<br><br>Chapter 11, Subchapter V<br><br>**DEBTOR'S RESPONSE TO OBJECTION BY SHANGHAI COMMERCIAL BANK TO SUBCHAPTER V DESIGNATION**<br><br>Hearing Date:<br>Date: September 29, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Dennis Montali<br>Place: Video/teleconference |

On June 28, 2023, Captain Corporation, a California corporation and debtor-in-possession in this case, ("Debtor" or "Captain") filed its *Voluntary Petition for Non-Individuals Filing for Bankruptcy* (the "Petition"). In that Petition, the Debtor elected to proceed as a Subchapter V Small Business Debtor, under Bankruptcy Code section 1182(1).[1] The Debtor is in the business of real estate investment and its principal asset is real property located at 30

---

[1] This Small Business option was created by the Small Business Reorganization Act of 2019 ("SBRA"), and incorporated at sections 1181 through 1195 of the Bankruptcy Code.

Falkirk Lane, Hillsborough, California 94010 (the "Property").[2] Shanghai Commercial Bank Limited ("SCB") is a secured creditor with a debt of approximately $2.17 million secured by a first-position Deed of Trust against the Property. On September 6, 2023, SCB filed an objection (the "Objection") [Doc. No. 35] to the Debtor's Subchapter V election.

The Objection asserts three arguments as to why SCB believes the Debtor does not qualify as a Small Business Debtor under Subchapter V of the Bankruptcy Code: (1) the Debtor no longer owns the Property, (2) the Debtor did not engage in commercial or business activities, and (3) none of the Debtor's debts arise from commercial or business activities. Each of these arguments is without merit and, as will be set forth below, are actually refuted by SCB's own documentation. The trustee's deed submitted by SCB to allegedly show the Debtor no longer owns the Property was recorded post-petition, in violation of the automatic stay, and thus void. The loans by SCB and the second position secured lender were commercial loans to the Debtor secured by the Property. Although the Property is a residential property, it was held by the Debtor—and financed by both secured lenders—as a commercial investment property. The loan documents speak for themselves on this issue and cannot be recharacterized for the convenience of SCB's arguments. Further, the Debtor has recently filed a motion to approve a post-petition lease agreement for the Property to document the pre-existing tenancy for the benefit of the bankruptcy estate. The Debtor, therefore, respectfully requests that the Court overrule the objection.

I.  **BACKGROUND**

Captain is a California corporation, formed in 1996, with its principal place of business in Burlingame, California. Captain is in the business of real estate investment. Dr. Shirlin Wong serves as Captain's President and Cheryl Tsao serves as Captain's Secretary and Chief Financial Officer. Dr. Wong is the beneficial owner of 100% of the equity interests in Captain through a living trust. Dr. Wong has been appointed the Debtor's Responsible Individual in this

---

[2] The Objection defines the Property as the "Residence." Because the Debtor's principal place of business is not the Property, but rather located in Burlingame offices, the Debtor will not follow the Objection's naming convention for the Property.

bankruptcy case.

Captain's primary asset is the Property. The Property is a 7,800 square foot, single-family residence with 7 bedrooms and 8 baths. The latest appraisal of the Property, dated September 9, 2021, valued the Property at $10,000,000 (the "Appraisal"). The Appraisal was obtained by secured creditor Val-Chris Investments, Inc. ("Val-Chris"), as a condition to the issuance of its loan to Captain in September 2021. *See Declaration of Cheryl Tsao in Support of Motion to Approve Post-Petition Residential Lease Agreement* (the "Tsao Decl.") [Doc. No. 40] at ¶3.

Two lenders have outstanding loans secured by the Property (collectively the "Secured Creditors" or, individually, a "Secured Creditor"). The combined amount outstanding to both Secured Creditors is approximately $5,191,877. The loan from Secured Creditor SCB, in the original principal amount of $2,750,000, is dated October 18, 2012. *See* Proof of Claim No. 4 by SCB, Attachment, at 27. The amount of SCB's pre-petition claim is approximately $2.17 million.[3] *See* Objection at 3:6. The loan from Secured Creditor Val-Chirs Investments, Inc. ("Val-Chris"), in the original principal amount of $2,700,000, is dated September 15, 2021. The amount of Val-Chris' pre-petition claim is approximately $3,021,877. *See* Schedule D at 2.3.[4] Both loans were made solely to Captain and guaranteed by Dr. Wong. Neither loan required an income stream by Captain to demonstrate an ability to make future payments but, instead relied upon the equity in the Property and guaranties by Dr. Wong as security.

The Debtor was behind in payments to both Secured Lenders pre-petition—with 3 months of payments owing to SCB and 9 months of payments owing to Val-Chris. *See Plan of*

---

[3] On September 6, 2023, SCB filed a proof of claim in this case which was assigned claim number 4. The amount asserted in the proof of claim is $2,352,816.22, including a $100,000 "Legal Fee." The Debtor reserves the right to object to this proof of claim and, for the purpose of this response, will use the $2.17 million valuation for SCB's claim.

[4] The deadline for filing proofs of claim was September 6, 2023. *See* Notice of Chapter 11 Bankruptcy Case [Doc. No. 7] at ¶8. Val-Chris did not file a proof of claim. Note, however, that the TDUS, as described below, attests the outstanding debt owing to Val-Chris is only $2,942,190.31. The Debtor reserves the right to amend its Schedules to reflect this reduced amount.

*Reorganization* [Doc. No. 32], Exhibit B. Val-Chris had noticed a default and pending trustee's sale. Captain, through its attorneys, was in active negotiations with Val-Chris to reinstate the loan. During the last week of May 2023, Captain was advised that Val-Chris proceeded with a foreclosure sale as to Property on May 16, 2023 (the "Pending Foreclosure"). This revelation by Val-Chris came as a surprise to Captain, as it believed forbearance discussions and consideration were still on-going based on communications as late as May 11, 2023. The Pending Foreclosure was not finalized prior to Captain's bankruptcy filing on June 28, 2023 (the "Petition Date"). Additional steps were required after the initial date of the foreclosure in accordance with new residential foreclosure laws effective as of January 1, 2021 (Civil Code Section 2924m). Captain also believes the Pending Foreclosure is invalid as it was not properly noticed. *See Debtor's Pre-Status Conference Report Pursuant to 11 U.S.C. § 1188(c)* [Doc. No. 27], 2:9-20.

The Objection notes that a Trustee's Deed Upon Sale (the "TDUS") was recorded by Val-Chris on July 7, 2023—nine days after the Petition Date. *See Declaration of Kelly E. Singer in Support of Shanghai Commercial Bank's Objection to Debtor's Designation as a Subchapter V Small Business Debtor* [Doc. No. 36], Exhibit 3. The TDUS reflects a credit bid by Val-Chris in the amount of $2,942,190.31 for the Property. *Id*. As the revelation in the Objection was the first Debtor was aware of the violation of the automatic stay, Debtor's undersigned counsel contacted Val-Chris' counsel, on September 7, 2023, regarding the TDUS and its violation of the automatic stay. Val-Chris apparently claims it was not aware of the Debtor's bankruptcy when it conducted the sale. While this is difficult to believe given the time between the filing and the sale, and the fact that notice of the bankruptcy filing was sent to Val-Chris and the foreclosure company, Val-Chris' awareness is irrelevant to the fact that the sale violated the automatic stay.

On August 22, 2023, the Debtor filed and served its *Plan of Reorganization for Small Business under Chapter 11* (the "Plan") [Doc. No. 32]. Through this Plan, any arrears on the loans to the Secured Creditors will be cured within 120 days of the effective date. The loans will remain intact with no change to the interest rate or maturity date. All other claims will be

paid in full within 120 days of the effective date of the Plan. The Plan will be funded by a new value contribution by Dr. Wong or a related entity. The confirmation hearing on the Plan will be held on October 13, 2023.

On September 19, 2023, the Debtor filed and served its *Motion to Approve Post-Petition Residential Lease Agreement* (the "Lease Motion") [Doc. No. 39]. The Lease Motion requests authority to enter into a Residential Lease Agreement with Dr. Wong and Ms. Tsao for the Property. Dr. Wong and Ms. Tsao live in the Property and pay all utilities related to the Property. The Property has been maintained at the expense of Dr. Wong and Ms. Tsao. There is, however, no written lease between Captain and Dr. Wong and Ms. Tsao. Funds necessary to cover the mortgage and tax payments for the Property have been advanced to Captain, from time to time, by either Dr. Wong and Ms. Tsao or another entity related to Dr. Wong and Ms. Tsao. The lease has a 1-year term and monthly rental rate of $14,500.00. The Lease also requires a $14,500.00 security deposit. *See* Tsao Decl.

## II. LEGAL ARGUMENT

Section 1182(1) defines a debtor eligible for Chapter 11, Subchapter V treatment to mean:

> a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.

11 U.S.C. § 1182(1). However, the application of the unique provisions of Subchapter V is not automatic and the debtor must elect whether not to proceed under Subchapter V at the time the bankruptcy petition is filed. Fed. R. Bankr. Proc. 1020(a). The Debtor made such a Subchapter V election in its Petition. The Objection asserts the Debtor does not meet the requirements of section 1182. Objection at 8:2-5. As noted above, the Objection sets forth three arguments in support of its positions: (1) the Debtor no longer owns the Property, (2) the Debtor did not engage in commercial of business activities, and (3) none of the Debtor's debts arise from commercial or business activities. While the burden is on the debtor to establish eligibility for

Case: 23-30421    Doc# 47    Filed: 09/22/23    Entered: 09/22/23 16:05:14    Page 5 of 10

5

Subchapter V if challenged, that burden is met here. *In re RS Air, LLC*, 638 B.R. 403, 405 (B.A.P. 9th Cir. 2022). The facts presented by SCB do not support any of SCB's arguments but, instead, support the Debtor's election.

**A. The TDUS is Void and the Debtor Owns the Property.**

The first argument raised in the Objection is that the "Debtor is not and cannot be a small business because it no longer owns the [Property]." Objection at 8:7-8. As a preliminary matter, whether or not the Debtor is engaged in the business of real estate investment does not hinge upon the Debtor's ownership of the Property. More importantly though, the alleged transfer of the Debtor's ownership of the Property post-petition via the TDUS is void as a fundamental matter of bankruptcy law. The TDUS was, on its face, recorded post-petition.[5] It is, therefore, void and of no effect. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) ("Our decision today clarifies this area of the law by making clear that violations of the automatic stay are void, not voidable."); *see also Bank of NY Mellon v. Enchantment at Sunset Bay*, 2 F. 4th 1229 (9th. Cir. 2021) (finding bank had superior title and could challenge foreclosure sale deed recorded by homeowners association post-petition as being in violation of the automatic stay). The Objection further suggests that the Debtor intentionally failed to disclosure the TDUS.[6] *See* Objection at 3:8-9. The reality is the Debtor was not aware of the TDUS, despite counsel having ongoing conversations with Val-Chris' counsel both pre- and post-petition, until the Objection was filed. The TDUS is, therefore, not a impediment to the Debtor's eligibility for

---

[5] *See also In re Hager*, 2023 WL 3668208 (Bankr. E.D. CA. May 25, 2023) (Applying Cal. Civ. Code § 2924m, which became effective January 1, 2021, and holding a foreclosure sale is not complete under California law until the Trustee's Deed Upon Sale is recorded. Since, per Cal. Civ. Code § 2924(c), the post-petition recordation of the deed does not relate back to the pre-petition sale date, the sale was void.).

[6] The Objection also suggests "the fact that the Debtor relies on a statute intended for a homeowner's residence merely confirms there is no business." Objection at 8:12-13. However, the provisions of Cal. Civ. Code § 2924m are not limited for the benefit of only homeowners. Rather, this new section modifies the non-judicial foreclosure auction bidding process for any real property containing up to four residential units. It elongates the foreclosure process to give a preference in treatment to "Eligible Tenant Buyers." Further, the fact that an investment property is residential in nature does not negate the fact that it is an investment property for the owner.

Subchapter V and the Objection's first argument fails.

**B. The Debtor is Engaged in Business.**

Next the Objection argues the Debtor is not "'engaged in commercial or business activities' when the property's sole purpose is a residence." Objection at 8:17-18. In support of this argument, the Objection cites *In re Quadruple D Trust*, 639 B.R. 204, 214 (Bankr. D. Colo. 2022). In *Quadruple D*, an irrevocable trust which held high-end residential real property filed for bankruptcy protection and elected Subchapter V treatment. The secured creditor, who had a pending foreclosure action, filed a motion to dismiss the bankruptcy case contending the Trust was not eligible for bankruptcy protection. The case turned on whether or not the Trust was a "business trust" within the meaning of Bankruptcy Code section 101(9). Since the court found the Trust did not meet the definition of a "business trust" it was ineligible to file bankruptcy and the case was dismissed. The secured creditor did not raise, and the *Quadruple D* court did not decide, whether the Trust was eligible for Subchapter V under section 1182.

Those are not the facts or the procedural posture in this case. The Debtor is a California corporation and has been operating since 1996, long before the loans issued by the Secured Creditors. It has filed its tax returns, timely paid its corporate taxes and maintained its corporate status with the California Secretary of State. The Debtor is not a trust. There is no question that it qualifies as a debtor under Bankruptcy Code section 101(9)A)(i). Instead, the only issue raised by the Objection is whether the Debtor is eligible for Subchapter V under section 1182.

The Bankruptcy Code does not define what "engaged in commercial or business activities" means. Instead, "courts generally have held that the scope of commercial or business activities is very broad and apply a 'totality of the circumstances' standard." *RS Air* at 410. It does not require, contrary to SCB's apparent belief, a profit motive. *Id.* at 413; *see* Objection at 3:15-16 (noting "no attempt appears to have been made to sell the [Property]."). Nevertheless, the long-term holding of residential properties, particularly in the Bay Area, is a proven method of increasing wealth substantially. The fact the Property has also served as

occasional residence of Dr. Wong and Ms. Tsao does not detract from the Debtor's investment strategy. *In re Ventura*, 615 B.R. 1, 19 (Bankr. E.D.N.Y. 2020) ("[T]he the fact that a debtor incurs mortgage debt to buy a residence does not automatically mean that the debt is consumer debt."). In return for the tenancy, Dr. Wong and Ms. Tsao maintained the Property for the benefit of the Debtor. Value was exchanged between the parties. The pending Lease Motion memorializes these mutual obligations under the pre-existing tenancy. *See also In re Blue*, 630 B.R. 179, 195 (Bankr. M.D.N.C. 2021) (Debtor's rental of her former residence to tenants was within the broad scope of commercial or business activities.).

The phrase "commercial or business activities" is "exceptionally broad." *In re Ikalowych,* 629 B.R. 261, 276-277 (Bankr. D. Colo. 2021). "Most courts interpret § 1182's broad, encompassing phrase 'commercial or business activities' as reflecting Congress' intent to provide wide availability for debtors to elect to file under subchapter V." *In re Hillman*, Case No. 22-10175 (Bankr. N.D.N.Y. June 2, 2023). Further, courts have "gone on to observe that § 1182(1)(A) speaks only to whether the debtor was engaged in commercial or business activities — `not whether the [d]ebtor was making a profit, actively operating, or intending to operate in the future.'" *In re RS Air*, 638 B.R. at 411 (*quoting Ikalowych*, 629 B.R. at 285). As acknowledged in the Objection at ¶ 25, courts interpreting §1182 have held that a debtor may even be "engaged in commercial or business activities" even when the business itself is no longer operating. *See In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520, 2021 WL 3668037, at *3 (Bankr. M.D. Fla. July 23, 2021) ("`[A]ctivities' encompasses acts that are business or commercial in nature but fall short of an actual operating business."). "A profit motive is not necessary for a debtor to qualify as being "engaged in commercial or business activities." *See* Bonapfel, Hon. Paul, *A Guide To the Small Business Reorganization Act of 2019*, Revised June 2022, at 24, https://www.ganb.uscourts.gov/sites/default/files/sbra_guide_pwb.pdf. The considerable appreciation in the value of the Property and the lease of the premises supports the conclusion that the Debtor was engaged in "commercial or business activities" as of the Petition Date by holding the Property. *See RS Air*, 638 B.R. at 411-12 (An entity formed for the sole purpose of acquiring and selling interests in aircraft and providing depreciation tax

benefits to its sole member is eligible for Subchapter V even though it has no profit motive.).

Each of these factors demonstrates the Debtor is engaged in "commercial or business activities", particularly within the broad application of that phrase under the cases interpreting 1182. The Objection's second argument also fails.

**C. Loans by Secured Lenders are Commercial Loans.**

Finally, the Objection argues the Debtor does not meet the requirement in section 1182(1) that not less than 50 percent of the debtor's debts arise from the commercial or business activities of the debtor. Objection at 10:5-6. SCB argues "the only liabilities the Debtor has (a secured tax claim and two mortgages) arose from or are related to the Debtor's personal residence." *Id.* at 10:19-20. Despite SCB's attempts to make Dr. Wong the Debtor in this case, she is not. Captain has no "personal residence." Dr. Wong and Ms. Tsao were and are the tenants of the Property. Neither Secured Lender extended a loan to Dr. Wong. Both loans were made solely for the benefit of Captain. Captain, as a California corporation, can have no household or consumer debts. The loans were, therefore, necessarily business loans. Further, per the Closing Statements, more than 50 percent of the initial principal amount of both loans to the Secured Creditors was used to pay off an existing encumbrance on the Property owed by Captain. The loans to the Secured Creditors (as well as the property taxes), therefore, arise as "commercial or business activities of the debtor."

In support of its argument, the Objection cites *In re Bennion*, Case No. 22-00102-NGH, 2022 WL 302675 (Bankr. D. Idaho July 29, 2022). In *Bennion*, the debtor, a sole proprietor who operated a tree-clearing business, injured himself while clearly property for his mother and stepfather. Over 90% of the debtor's debts were medical expenses related to that injury. The Debtor did not charge his mother and stepfather for the work before the accident. Although the debtor was in the business of clearing trees, the court found this particular project was not "commercial or business" in nature. The *Bennion* court sustained the U.S. Trustee's objection to the debtor's Subchapter V election.

The Objection implies from its interpretation of *Bennion* that because Dr. Wong and Ms. Tsao derived a benefit from the Property, the loans taken out by Captain secured by the

Property were "done for a 'personal or family purpose' . . .[and] not commercial or business in nature." Objection at 10:15-18. However, unlike *Bennion*, Dr. Wong and Ms. Tsao provide substantial consideration to Captain—monetary and otherwise—in return for their tenancy on the Property. *See also Lyons v. Family Friendly Contracting LLC (In re Family Friendly Contracting LLC)*, 2021 WL 5540887 at * 5 (Bankr. D. Md. 2021) (Statute "does not require the court to dissect the various benefits obtained by all the parties and, for purposes of § 1182(1)(A), include only debt that is linked to a direct benefit obtained by a debtor, while excluding debt that directly benefitted others."). The loans to the Secured Lenders satisfy the requirement that at least 50 percent of the Debtor's debts arise from commercial or business activities, and the Objections final argument is without merit.

### III. CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court enter an order overruling the Objection and finding the Debtor is eligible for its Subchapter V designation.

Dated: September 22, 2023                FINESTONE HAYES LLP


By:  */s/ Stephen D. Finestone*
　　　Stephen D. Finestone
　　　Counsel for Debtor Captain Corporation