Squire Patton Boggs (US) LLP
Karol K. Denniston (CA Bar # 141667)
555 California Street, Suite 550
San Francisco, California 94104
Telephone: (415) 954-0200
Facsimile: (415) 393-9887
karol.denniston@squirepb.com

Kelly Singer (admitted pro hac vice)
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602.528.4000
Facsimile: 602.253.8129
kelly.singer@squirepb.com

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Captain Corporation<br><br><br>Debtor. | Case No. 23-30421 (DM)<br><br>Chapter 11, Subchapter V<br><br>**SHANGHAI COMMERCIAL BANK'S OBJECTION TO DEBTOR'S PLAN**<br><br>Date: October 13, 2023<br>Time: 10:00 a.m. (PT)<br>Via video/teleconference |

Shanghai Commercial Bank Limited ("SCB"), by and through undersigned counsel, hereby files its objection (the "Objection") to the *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 32] (the "Plan") filed by Captain Corporation (the "Debtor").

This Objection is supported by the entire record before the Court, the *Declaration of Kelly Singer Filed in Support of Shanghai Commercial Bank's Objection to the Debtor's Plan* [Docket No. 59], filed contemporaneously herewith (the "Singer Declaration"), *Shanghai Commercial Bank's Objection to Debtor's Designation as a Subchapter V Small Business Debtor* as supplemented

- 1 -

[Docket Nos. 35 and 52] (the "<u>Subchapter V Objection</u>"), which is incorporated herein, *Shanghai Commercial Bank's Objection to Debtor's Motion to Approve Post-Petition Lease Agreement* [Docket No. 55] (the "<u>Lease Objection</u>"), which is incorporated herein, and the following points and authorities.

**INTRODUCTION**

1. SCB's Subchapter V Objection underscores SCB's objections to the Plan. ***<u>The Debtor is not and never has been a business</u>***. In a sloppy attempt to remedy that fact, Dr. Shirlin Wong (the Debtor's 100% owner) filed a motion to approve a post-petition "lease" (the "<u>Lease</u>") for the property the Debtor purportedly owns.[1] Dr. Wong's tactic will not work and SCB specifically raised its concerns in the Subchapter V Objection and the Lease Objection.[2]

2. The Lease contains various red flags concerning its true purpose. For starters, the Debtor purports that the one-year lease formalizes an "informal" arrangement that has existed for over twenty years. This makes no sense because the Lease will undoubtedly automatically renew indefinitely. Further, the Lease did not appear in any of the Debtor's filings, and Dr. Wong failed to mention the Lease at the 341 Meeting, despite the second day of the 341 Meeting occurring **<u>one week</u>** ***after*** **the parties signed the Lease.** Neither the Lease nor rental income is mentioned anywhere in the Plan, **which was also filed well after execution of the Lease**.

3. The last-second scrambling to establish the Debtor as a business capable of earning income and funding a plan reinforces that the Debtor cannot propose a feasible Plan. At the 341 Meeting, Dr. Wong stated, when asked by the US Trustee to "describe the business of the Debtor," that "there is no business . . . it's just a place that, you know, I live."[3] Dr. Wong further testified that there was no other purpose for the Residence than residential,[4] and could not substantially respond to any questions concerning licenses, insurance, bank accounts, and financial statements that would

---

[1] *See Motion to Approve Post-Petition Residential Lease Agreement* [Docket No. 39].
[2] *See* Subchapter V Objection [Docket No. 52] at 3-5.
[3] [July 25, 341 Tr. at 51:18-52:2], attached as Exhibit 1 to the Singer Declaration.
[4] [Id. at 89:15-20].

1. normally be associated with an operating business.[5] Even after giving two weeks to refresh her memory, Dr. Wong was unable to describe what licenses the Debtor maintained to operate as a business, despite now asserting in vague terms that the Debtor is in the business of holding property.[6]

4. Even if the Debtor still owns the Residence (which it does not), the Lease does not change the fact that for 20 years owning the property, the Debtor never had any agreement (formal or informal) regarding the use, occupancy, maintenance, investment, or sale of the Residence. Dr. Wong, or some unnamed entity affiliated with Dr. Wong, pays for the mortgages and did everything else for the Residence. Historically and to this day, the Debtor has **zero** income. **Zero** cash receipts. **Zero** receivables. **Zero** employees. **Zero** projected cash receipts and disbursements. **Zero** projected net cash flow. **Zero** cash, aside from $488.00 in its DIP account (up from $14.00 thanks to a $500 deposit from Dr. Wong).[7] The Debtor has **zero** operations.[8]

5. Under these circumstances, it is no surprise that the Plan is unconfirmable on its face. SCB's loan is in default, and it is tired of Dr. Wong's games. SCB plans to file the *Motion of Shanghai Commercial Bank for Relief from the Automatic Stay and Memorandum of Points and Authorities* (the "Stay Relief Motion") prior to the hearing on the Plan confirmation, under which SCB seeks authority to exercise its remedies against the Residence the Debtor claims to own.

6. Under these circumstances, the Court should deny confirmation of the Plan and grant the relief that SCB will request in the Stay Relief Motion.

## FACTUAL BACKGROUND

**A.     The Debtor Does Not Own The Residence.**

7. On June 28, 2023, the Debtor filed a voluntary petition and elected treatment as a Subchapter V case. Gina Klump is the Subchapter V trustee.[9]

---

[5] [Id. at 9:10-10:7; 21:16-22:5; 25:17-27:15; 27:20-28:16].
[6] [Aug. 7, 341 Tr. at 16:13-17:4; 18:4-18], attached as Exhibit 2 to the Singer Declaration.
[7] The *Monthly Operating Report for Small Business Under Chapter 11* filed on Sept. 21, 2023 (the "September Monthly Operating Report") shows a $500 deposit from Dr. Wong, which may or may not be a loan. *See* September Monthly Operating Report at 5.
[8] *See* the Subchapter V Objection at 4-7; September Monthly Operating Report, at 2-3.
[9] [Docket No. 14].

- 3 -

8. The Debtor claims to have one asset: the residence located at 30 Falkirk Lane, Hillsborough, California 94010 (the "Residence"). Dr. Shirlin Wong (the Debtor's 100% owner) and her spouse have lived at the Residence since the Debtor purchased the property approximately 20 years ago.[10]

9. The Residence is subject to the senior lien of SCB. As of the filing of this Objection, SCB's secured claim is approximately $2,452,816.23.[11]

10. According to the Debtor, Val-Chris Investments on behalf of certain individuals[12] (the "Junior Lienholder") holds a junior lien against the Residence. The public records for the State of California, however, show that the Junior Lienholder foreclosed on its junior lien against the Residence on May 17, 2023, and recorded a Notice of Default in the Official Records of San Mateo, California.[13] The resulting Trustee's Deed Upon Sale was recorded with the Clerk-Recorder in the County of San Mateo on July 7, 2023.[14]

11. Accordingly, the public records reflect that title to the Residence has been transferred to the Junior Lienholder, subject to SCB's senior lien. The Debtor nevertheless claims title to the Residence and asserts that the foreclosure was improper. The Debtor has not sought to avoid the foreclosure. No steps have been taken to set aside the foreclosure or remove the lien.

12. On September 22, 2023, the Junior Lienholder filed a motion for relief from stay,[15] seeking to honor the pre-bankruptcy foreclosure or for relief to complete its foreclosure.

---

[10] [July 25, 341 Tr. at 53:10-14].
[11] *See* Proof of Claim Number 4-1 filed by SCB, subject to accumulating amounts.
[12] Donald K. Reitzfeld, an unmarried man, as to 19.48% interest, Daroll Laverne Frewing and Dolores Fern Frewing, Trustees or the Survivor of them of the Frewing Family Trust dated August 12, 1998, as to 18.52% interest, Provident Trust Group FBO Donald Reitzfeld IRA, as to 17.56% interest; NVS Investments, LLC, a California Limited Liability Company, as to 12.97% interest, Benjamin Schwan, a married man as his sole and separate property, as to 7.41% interest; Bruce Rado, Trustee of the Bruce E. Rado Living Trust dated May 14, 2007, as to 7.41% interest; John Sager and Julie Sager, Trustees of the Sager Family Trust dated October 1, 2013 as to 5.55% interest; Schwartz Enterprises Inc., a California Corporation, as to 5.55% interest, and Craig S. Dodson, Trustee of the Craig S. Dodson Trust dated April 25, 2013 as to 5.55% Interest as Tenants in Common.
[13] See Trustee's Deed Upon Sale, attached as Exhibit 3 to the Declaration.
[14] *Id.*
[15] [Docket No. 44].

- 4 -

**B.      The Debtor's Plan**

13.     The Debtor filed the Plan on August 22, 2023. The Plan provides in pertinent part as follows:

- Aside from surface-level descriptions of the corporation (e.g., when it was formed and its state of incorporation), the Debtor provides no description of its business history other than "real estate investment."[16] There is no operating business.

- The Plan proposes to reinstate SCB's debt and senior lien against the Residence in accordance with SCB's loan documents, as well as the Junior Lienholder's debt and junior lien against the Residence.[17] But the loans are in default and the Junior Lienholder has foreclosed. In addition, the Debtor provides zero evidence that this treatment satisfies § 1191(c)(1), which incorporates § 1129(b)(2)(A)'s "fair and equitable" standard for secured creditors.

- Dr. Wong proposes to fund the Plan. There is no evidence to support this assertion. Dr. Wong's unsupported statement regarding providing proposed funding is the only source of capital to pay SCB (and all other creditors). This is not acceptable because it is wholly unsubstantiated and at odds with the fact that this case exists because Dr. Wong could not meet mortgage obligations pre-bankruptcy.

- Dr. Wong also proposes to cure all arrearages with SCB and the Junior Lienholder within four (4) months after the effective date, in addition to making normal installments owed to SCB under its loan documents.[18] This constitutes impairment and SCB votes against confirmation of the Plan.

- The Plan proposes to maintain the automatic stay for indefinitely beyond the effective date, and further requires that SCB return to the Bankruptcy Court for relief from any future default.[19]

- The Plan is also vague (perhaps purposely) on whether it seeks to cure or remedy any default of third-party, non-debtor guaranty. SCB objects to the extent that anything in this bankruptcy

---

[16] *See* the Plan at 1.
[17] The Plan at 5.
[18] *Id.*
[19] *Id.* at 7.

impacts SCB's rights to pursue guaranty obligations against non-debtors.

## OBJECTION

### A. SCB Is Impaired And Votes Against Confirmation Of The Plan.

14. The Bankruptcy Code presumes that a claim is impaired unless the Plan "leaves unaltered the legal, equitable, and contractual rights" of the creditor. 11 U.S.C. § 1124(1). The Ninth Circuit defines impairment in the "broadest possible terms" such that "*any* alteration of a creditor's legal, equitable, and contractual rights by a debtor's plan constitutes impairment." *In re PG&E Corp.*, 46 F4th 1047, 1055 (9th Cir. 2022) (emphasis added).

15. Setting aside for the moment that the Debtor does not own the Residence, the Plan alters SCB's contractual rights under its loan documents. Put simply, the Debtor is not reinstating SCB's loan documents; it is proposing material modifications that directly impact (indeed, prohibit) contractual remedies. The Plan delays arrearage payments for up to four (4) months, it requires SCB to reopen the bankruptcy and petition the Court in the event of a default, and the Plan proposes to reinstate the junior lien in violation of SCB's loan documents.[20]

### B. The Plan Is Not Feasible Under § 1129(a)(11).

16. Section 1129(a)(11), made applicable through § 1191(a), requires the Debtor to show that confirmation of the Plan is "not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." *In re Curiel*, 651 B.R. 548, 560 (9th Cir. BAP 2023) (stating that satisfaction of § 1129(a)(11) is "critical" and denying the plan because the debtor failed to establish through evidence that the plan was feasible.). "[S]heer optimism and hopefulness, without more, is not sufficient to support a finding of feasibility." *Id.* at 565; *see also In re Claar Cellars*, 623 B.R. at 595 ("Establishing feasibility requires more than a promise, hope, or

---

[20] *See* Adjustable Rate Note, attached as Exhibit 4 to Singer Declaration at 5.

unsubstantiated prospect of success" and "a bankruptcy court must adopt a level-headed approach and evaluate a plan's chances based on objective facts." (citations omitted)).

17. The Plan is not feasible. Dr. Wong's wholly unsubstantiated representation that she will fund the Plan is not supported by the evidence and defies belief given the facts of this case. This representation by Dr. Wong merely begs the question of why are we here if Dr. Wong has access to funds to make payments. *See Claar Cellars, LLC*, 623 B.R. 578, 598 (Bankr. E.D. Wash. 2021) (identifying the factors courts analyze for purposes of feasibility, including, adequacy of capital structure, earning power of the business, debtor's management, and any matters related to the Debtor's ability to meet plan obligations).

18. The Lease cannot support feasibility. Indeed, SCB has objected to the proposed Lease due to, among other things, the gamesmanship surrounding its execution.[21] The payments pursuant to the Lease also do not cover the mortgage payment for both SCB and the Junior Lienholder. The Lease also does not address the fundamental question of how Dr. Wong can make Lease payments **and** make up the shortfall between the rent and the total mortgage payments for the Residence.

**C.      The Debtor Cannot Satisfy §§ 1190(1)(A) And (1)(C).**

19. Section 1190 requires that the Debtor include "a brief history of the business operations of the debtor." 11 U.S.C. § 1190(1)(A). The Debtor is to provide, among other things, a complete description of the debtor's business activities and the causes of the debtor's distress to satisfy § 1190(1)(A). *See In re Samurai Martial Sports, Inc.*, 644 B.R. 667, 688 (Bankr. S.D. Tex. 2022) (finding that the debtor satisfied § 1190(1)(A) when the plan provided, among other things, that the debtor ran a sports complex and fitness facility, described the type of classes held at the facility, and described how Hurricane Harvey and COVID-19 caused it to shut down operations on multiple occasions).

---

[21] *See* Lease Objection. SCB also never consented to the Lease.

20. Ministerial formation-related recitals do not inform SCB (nor the Court) of how the Debtor operates, its business activity, or the financial circumstances that pushed the Debtor towards filing bankruptcy. The unsubstantiated statement that the Debtor is in the business of "real estate investment" flies in the face of the 341(a) testimony and is spurious if not objectively false.[22]

21. The Debtor must also provide "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." 11 U.S.C. § 1190(1)(C). Anyone can put numbers in a spreadsheet to describe a principal's proposed funding obligations. Notwithstanding the schedule, there is no evidence to support the assertion that the debtor's principal can fund the plan. This does not satisfy § 1190(1)(C). *See In re No Rust Rebar, Inc.*, 641 B.R. 412, 427 (Bankr. S.D. Fla. 2022) (finding that a Plan failed to meet § 1190(1)(C) when it offered "no estimate of the amount of capital investment required for it to begin operating, a business plan, projections showing profitability allowing it to pay its creditors, or *substantive information regarding the availability of capital other than a vague promise . . . to fund the plan*." (emphasis added)).

22. The Debtor provides no evidence to support the projections contained in Exhibit B of the Plan.

**D.    The Plan Wholly Fails To Address SCB's Legal Rights.**

23. The Plan must be "fair and equitable" to SCB. 11 U.S.C. § 1191(c). Section 1191(c) requires that (1) the Plan meet the requirements of § 1129(b)(2)(A), (2) the debtor has no disposable income greater than payments being made on the plan or that all disposable income will be pledged to make plan payments, and (3) the debtor will be able to make all payments or, otherwise, there is a reasonable likelihood that the debtor will be able to make all payments and the plan provides the

---

[22] *See* [July 25, 341 Tr. at 9:10-10:7; 21:16-22:5; 25:17-27:15; 27:20-28:16, 51:18-52:2; 89:15-20].

appropriate remedies if payments are not made, such as the liquidation of all assets. *See* 11 U.S.C. § 1191(c).

24. First, there is no evidence to support that the proposed treatment of SCB provides that SCB "receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the [P]lan, of a least the value of such holder's interest in the [Residence.]" 11 U.S.C. § 1129(b)(2)(A)(ii). At the very least, the interest rate for SCB should increase given the circumstances of this case and the economic conditions existing as of the prospective effective date of the Plan.

25. Second, of course there is no discussion about the Debtor's disposable income and whether it is being pledged towards Plan payment. The Debtor has no income, and therefore, cannot meet this requirement.

26. Third, the Debtor provides no remedy or protection to SCB commensurate with the inevitable default that will occur under the Plan. The Debtor instead seeks to require that SCB re-open the bankruptcy case and further petition the Court when the Debtor defaults. Such a requirement would be inappropriate in a standard chapter 11 case, where the automatic stay generally ends upon confirmation. However, the Debtor's attempts at manufacturing subchapter V eligibility allow it access to many provisions of the Bankruptcy Code which will unfairly prejudice its secured lenders, including using the court as a gatekeeper if Dr. Wong and the Debtor default on their mortgage in the future.

27. When a default occurs, at a minimum, SCB should be allowed to immediately exercise its rights as specified in its loan documents, including foreclosure rights. Furthermore, to the extent Dr. Wong has made a deposit under the Lease, that deposit should be maintained and given to SCB as security for payment for any future default, including property tax payments.

- 9 -

Case: 23-30421    Doc# 58    Filed: 10/06/23    Entered: 10/06/23 15:08:23    Page 9 of 10

E. **The Plan Cannot Remedy Defaults Under A Third-Party, Non-Debtor Guaranty.**

28. Dr. Wong guaranteed the debt owed to SCB.[23] The Plan vaguely states that "guaranties will remain after completion of the Plan . . . ."[24] SCB objects to the extent confirmation, the effective date, or discharge under the Plan is intended to cure or remedy a default under Dr. Wong's guaranty. It is axiomatic that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

## CONCLUSION

29. The Court should deny the Plan and grant such other and further relief the Court deems necessary and appropriate. SCB reserves the right to further supplement this Objection.

Dated: October 6, 2023

Squire Patton Boggs (US) LLP

By: *s/ Karol K. Denniston*
Karol K. Denniston

Attorney for Shanghai Commercial Bank, Limited.

---

[23] *See* Continuing Guaranty, attached as Exhibit 5 to the Singer Declaration.
[24] The Plan at 2.