Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CAPTAIN CORPORATION,<br><br>Debtor and Debtor-in-Possession. | Case No. 23-30421<br><br>Chapter 11, Subchapter V<br><br>**MOTION TO DISMISS CHAPTER 11 CASE**<br><br><u>Hearing Date</u>:<br>Date: November 17, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Dennis Montali<br>Place: Tele/Videoconference |

Captain Corporation ("Debtor") hereby moves, pursuant to Bankruptcy Code sections 305(a)(1), 349(b) and 1112(b)[1] and the Court's *Guidelines Regarding Voluntary Dismissal of Chapter 11 Cases* (the "Guidelines"), for the entry of an order, substantially in the form attached hereto as Exhibit A, approving the voluntary dismissal of this Chapter 11 case and providing related relief as described herein (the "Motion").

Debtor's bankruptcy filing was precipitated by a disputed trustee's sale as to Debtor's primary asset—real property located at 30 Falkirk Lane, Hillsborough, California (the

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure.

"Property")—conducted by the secured creditor holding a second-position lien on the Property[2] ("Val-Chris"). The trustee's sale was not completed prior to the bankruptcy filing. Debtor's Plan of Reorganization (the "Plan") [Doc. No. 32] provides for reinstatement of the secured debt against the Property within 120 days from the effective date.

Debtor now has access to sufficient funds to immediately reinstate the loans secured by the Property. Rather than delaying the distribution to creditors through the Plan confirmation process, Debtor seeks to finalize and pay the claims now, in accordance with the Guidelines. Once the loans have been reinstated, the purpose of the bankruptcy filing will be satisfied, and dismissal is the most efficient and appropriate course of action. As discussed below, in order to resolve any disputes with the secured creditors, the Motion includes suggested procedures to handle any issues that may arise.

The Motion is supported by the declaration of Dr. Shirlin Wong (the "Wong Declaration") filed contemporaneously herewith. In support of the Motion, Debtor respectfully submits as follows:

**I.        JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and B.L.R. 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.       BACKGROUND**

Debtor is a California corporation, formed in 1996, with its principal place of business in Burlingame, California. Dr. Shirlin Wong serves as Debtor's President and Cheryl Tsao

---

[2] The secured creditor group is comprised of Donald K. Reitzfeld; Daroll Leverne Frewing and Dolores Ferm Frewing, Trustees or the Survivor of them of the Frewing Family Trust Dated August 12, 1998; Provident Trust Group FBO Donald Reitzfeld IRS; NVS Investments, LLC; Benjamin Schwan; Bruce Rado, Trustee of the Bruce E. Rado Living Trust Dated May 14, 2007; John Sager and Julie Sager, Trustees of the Sager Family Trust Dated October 1, 2013; Schwartz Enterprises Inc.; and Craig S. Dodson, Trustee of the Craig S. Dodson Trust Dated April 25, 2013, as Beneficiary.

serves as Debtor's Secretary and Chief Financial Officer. Dr. Wong is the beneficial owner of 100% of the equity interests in Debtor through a living trust. Debtor is in the business of real estate investment with its primary asset being the Property. The Property is a 7,800 square foot, single-family residence with 7 bedrooms and 8 baths. The latest appraisal of the Property, obtained by Val-Chris and dated September 9, 2021, valued the Property at $10,000,000.

Two lenders have outstanding loans secured by the Property (collectively the "Secured Creditors"). The combined amount outstanding to both Secured Creditors is approximately $5,191,877. The loan from Secured Creditor Shanghai Commercial Bank ("SCB"), in the original principal amount of $2,750,000, is dated October 18, 2012. *See* Proof of Claim No. 4 by SCB, Attachment, at 27. The amount of SCB's pre-petition claim is approximately $2.17 million.[3] The loan from Val-Chris, in the original principal amount of $2,700,000, is dated September 15, 2021. The amount of Val-Chris' pre-petition claim is approximately $3,021,877. *See* Schedule D at 2.3.[4] Both loans were made to Debtor and guaranteed by Dr. Wong.

On June 28, 2023, Debtor filed its *Voluntary Petition for Non-Individuals Filing for Bankruptcy* commencing this bankruptcy case (the "Petition Date"). On July 3, 2023, Gina Klump was appointed as the Subchapter V Trustee in this case.

Before the Petition Date, Debtor was behind in payments to both Secured Creditors—with 3 months of payments owing to SCB and 9 months of payments owing to Val-Chris. *See Plan of Reorganization* [Doc. No. 32], Exhibit B. Val-Chris had noticed a default and pending trustee's sale. Debtor, through its attorneys, was in active negotiations with Val-Chris to

---

[3] On September 6, 2023, SCB filed a proof of claim in this case (Claim 4). The proof of claim asserts a debt of $2,352,816.22, including a $100,000 "Legal Fee." The Debtor reserves the right to object to this proof of claim or amended versions. For the purpose of this Motion, Debtor values SCB's claim at $2.17 million.

[4] The deadline for filing proofs of claim was September 6, 2023. *See* Notice of Chapter 11 Bankruptcy Case [Doc. No. 7] at ¶8. Val-Chris did not file a proof of claim. Note, however, that the TDUS, as described below, attests the outstanding debt owing to Val-Chris is only $2,942,190.31. The Debtor reserves the right to amend its Schedules to reflect this reduced amount.

reinstate the loan. During the last week of May 2023, Debtor was advised that Val-Chris proceeded with a foreclosure sale as to Property on May 17, 2023 (the "Pending Foreclosure").

Debtor asserts this action by Val-Chris was wrongful because (1) the parties were in loan forbearance discussions at the time with Debtor awaiting a response from Val-Chris and (2) the trustee's sale was not properly noticed. Val-Chris disputes both assertions. The Pending Foreclosure was not complete as of the date of the trustee's sale. Additional steps were required after the initial date of the foreclosure in accordance with new residential foreclosure laws effective as of January 1, 2021 (Civil Code Section 2924m).

Nine days after the Petition Date, July 7, 2023, Val-Chris recorded a Trustee's Deed Upon Sale (the "TDUS") as to the Property. The TDUS reflects a credit bid by Val-Chris in the amount of $2,942,190.31 for the Property. *Id.* Debtor did not learn of the TDUS until it was noted in an objection filed by SCB on September 6, 2023 [Doc. No. 35]. Debtor's counsel immediately thereafter contacted Val-Chris' counsel, on September 7, 2023, regarding the TDUS and its violation of the automatic stay. Val-Chris contends that the recordation of the TDUS relates back to the date of the trustee's sale. Debtor disputes this contention and asserts that the recordation is void and a violation of the automatic stay provided by Bankruptcy Code Section 362. The validity of the recordation of the TDUS is one of the subjects in Val Chris' pending motion for relief from stay.

**Debtor's Plan of Reorganization**

On August 22, 2023, Debtor filed its *Plan of Reorganization for Small Business under Chapter 11* (the "Plan") [Doc. No. 32]. The Plan proposes to cure any arrears on the loans to the Secured Creditors within 120 days of the effective date. There are no changes to the interest rate or maturity date of either loan. The other major claim, approximately $27,000 owed to San Mateo County for property taxes, will be paid in full within 120 days of the effective date of the Plan. The Plan will be funded by a new value contribution by Dr. Wong or a related entity. The confirmation hearing on the Plan is scheduled for October 13, 2023.

On September 6, 2023, SCB filed an objection to Debtor's Subchapter V election (the "Subchapter V Objection") [Doc. No. 35]. The Subchapter V Objection was initially heard on

September 29 and continued to October 12, in light of this anticipated Motion.

On September 19, 2023, the Debtor filed and served its *Motion to Approve Post-Petition Residential Lease Agreement* (the "Lease Motion") [Doc. No. 39]. The Lease Motion requests authority to enter into a Residential Lease Agreement with Dr. Wong and Ms. Tsao for the Property. The Lease Motion is scheduled to be heard on October 13.

On September 22, 2023, Val-Chris filed a motion for relief from stay seeking to validate the Pending Foreclosure Sale (the "MRS"). The MRS is scheduled to be heard on October 12, 2023. On October 7, 2023, Debtor filed an opposition to the MRS (the "MRS Opposition") [Doc. No. 61].

**The Current Motion to Dismiss**

At the September 29 hearing, Debtor confirmed it is ready to pay the reinstatement to both Secured Creditors now. Debtor announced its intention to move to dismiss the case and reinstate the loans, but it has oddly encountered difficulty reaching an agreement with the Secured Creditors on this option. Since a stipulation between the parties does not appear to be forthcoming, Debtor brings this Motion now to tailor the needed relief in accordance with the Guidelines.

As set forth in more detail in the Wong Declaration in support of the Motion, Debtor has access to sufficient funds through a related entity to bring the Secured Creditors current and satisfy all other outstanding claims in this Case. To eliminate the need for contested hearings on Plan confirmation, the Lease Motion, the MRS and the Subchapter V Objection, Debtor has agreed to fund the payments that would otherwise be owing under the Plan now, prior to the requested dismissal of the case.

**III.    RELIEF REQUESTED**

By this Motion, the Debtor seeks an order (i) authorizing the Debtor to make payments on account of the scheduled and/or filed allowed claims in accordance with the priority scheme under the Bankruptcy Code, updated as of the Response Date (as defined below), and a determination that the debts to the Secured Creditors are reinstated and that Val-Chris must

rescind its TDUS , (ii) authorizing the Debtor to pay the fees and expenses incurred by the Subchapter V Trustee, as allowed by the Court, and (iii), after such payments, dismissing the Debtor's Chapter 11 case.

**IV.     PROPOSED DISMISSAL PROCEDURES**

In connection with the proposed dismissal of this Chapter 11 Bankruptcy Case, Debtor proposes the following procedures (the "Dismissal Procedures"):

1. <u>Procedure to Fix Reinstatement Amounts</u>. On or before November 3, 2023, the date upon which any opposition to this Motion is also due (the "Response Date"), the Secured Creditors shall provide to Debtor's counsel a detailed and final reinstatement calculation for each loan as of the Response Date.  These calculations shall also include a per diem amount to be added to such total for every day accruing after the Response Date, in accordance with the ordinary loan terms (the "Reinstatements").  Debtor shall have 5 business days from receipt to challenge the Reinstatements by filing an objection, to be heard on an expedited basis, with the Bankruptcy Court.  Any such disputes regarding the Reinstatement amounts will be decided by the Bankruptcy Court. To the extent there are disputes as to some Reinstatement amounts, but not as to others, Debtor shall pay the undisputed Reinstatement amounts.

2. <u>Property Taxes</u>.  Upon the Court's approval of the Motion and finalization of the Reinstatements, Debtor shall pay the reinstatement amounts to SCB and Val-Chris, and the outstanding property taxes due San Mateo County prior to an order being entered dismissing this case.

3. <u>Rescission of TDUS</u>.  Within 3 business days of its receipt of the Val-Chris Reinstatement, Val-Chris shall rescind the TDUS and related Notice of Default.

4. <u>Review of Subchapter V Trustee Fees</u>.  Upon the Court's approval of the Motion, the Subchapter V Trustee shall file her application for fees and costs incurred in this case. Debtor shall pay the amount awarded prior to entry of the order dismissing the case.

5. <u>Entry of Order Dismissing Case</u>.  Debor shall submit a statement confirming that the above required Dismissal Procedures have been completed and request the entry of an

order dismissing the Bankruptcy Case.

6. <u>Retention of Jurisdiction by Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction to enforce these provisions and orders entered in this case will remain in full force and effect notwithstanding the dismissal.

**V.    BASIS FOR RELIEF REQUESTED**

A. **This Court May Dismiss the Case Without Cause**.

Section 305(a)(1) of the Bankruptcy Code provides that "[t]he court after notice and a hearing, may dismiss a case under this title . . . at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal . . ." 11 U.S.C. § 305(a)(1). No "cause" is required to be shown. Dismissal under section 305 is solely within the Court's sound discretion looking at the totality of the circumstances. *In re Marciano*, 459 B.R. 27, 48-49 (BAP 9th Cir. 2011).

> "Whether to dismiss a case or abstain pursuant to section 305 is committed to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances," *In re Mylotte, David & Fitzpatrick*, No. 07-14109bf, 2007 WL3027352, *5 (Bankr. E.D. Pa. Oct. 11, 2007). Courts agree that abstention under § 305(a)(1) is a form of "extraordinary relief." [*In re Aerovaia Nacioales De Colombia S. A. Avianca*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)]; *In re Paper I Partners, L.P.,* 283 B.R. 661, 678 (Bankr.S.D.N.Y.2002)
>
> "Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr.D.Del.2009) quoting *In re Monitor Single Lift I, Ltd*., 381 B.R. 455, 462(Bankr.S.D.N.Y.2008). Courts have recognized that § 305(a)(1) "was designed to be utilized where, for example, a few recalcitrant creditors attempted to interfere with an out-of-court restructuring that had the support of a significant percentage of the debtor's creditors." *In re Stillwater Asset Backed Offshore Fund Ltd*., 485 B.R. 498, 509 (Bankr.S.D.N.Y.2013). *See also Mylotte, David & Fitzpatrick*, 2007 WL 3027352, *5.

*In re Northshore Mainland Services, Inc.,* 537 B.R. 192, 203 (Bankr. D. Del. 2015).

Courts consider the following non-exclusive factors "to gauge the overall best interests" of the debtor and creditors under section 305:

(1) the economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*In re AMC Investors,* 406 B.R. 478, 488 (Bankr. D. Del. 2009). Several of these factors—1, 4 and 7—are present and weigh in favor of the relief sought by this Motion. In light of pending contested matters and Debtor's ability to bring all creditors immediately current, dismissal pursuant to the Dismissal Procedures noted above is in the best interest of Debtor and its creditors.

### B. Alternatively, the Court may Dismiss the Case for Cause.

Bankruptcy Code section 1112(b) provides that on request of a party in interest, the Court may dismiss a Chapter 11 case for cause. The section provides in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

Bankruptcy courts have broad discretion to determine whether cause exists.[5] *See, e.g.,*

---

[5] Section 1112(b)(2) provides two circumstances where court doesn't have discretion to dismiss for cause: (1) where a confirmed plan is imminent or (2) the grounds for dismissal include and act or omission by the debtor which can be remedied. Neither of these conditions are present. While Debtor believes its Plan would ultimately be confirmed, there has already been significant opposition by the Secured Creditors.

*In re Products Int'l Co.,* 395 B.R. 101, 107 (Bankr. D. Ariz. 2008); *In re YBA Nineteen, LLC*, 505 B.R. 289, 302 (S.D. Cal. 2014). A bankruptcy court's decision to dismiss rests within in own sound discretion and may be reversed on appeal only for abuse of discretion. *Hickman v. Perlmuter (In re Hickman),* 384 B.R. 832, 840 (BAP 9th Cir. 2008). Section 1112(b)(4) provides 16 examples of what may constitute case for dismissal in a particular case. However, this list, comprised largely of actions a bankruptcy debtor may fail to take to comply with the requirements of the Bankruptcy Code, is not exhaustive and the Court may find that cause exists for dismissal under the particular facts of any case. The Court may consider other factors as they arise and "may use its equitable powers to reach an appropriate result in individual cases." S.Rep. No. 989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S. Code cong. & Admin News 5787, 5903); *see also In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990) (Section 1112(b) is not an exhaustive list, and the court is not limited to the enumerated grounds in making its determination of cause); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991) (same).

      Cause may exist when the primary purpose of the bankruptcy case has been achieved. *See, e.g., In re MELP, Ltd.,* 143 B.R. 890, 893 (Bankr. E.D. Mo. 1992) ( "In this case MELP came into bankruptcy court seeking protection of the automatic stay to enable it to reorder its affairs and make peace with its creditors. This purpose has been successfully achieved."). Here, the primary purpose of the bankruptcy has been achieved. The loans will be reinstated and the parties returned to their pre-default positions through the proposed Dismissal Procedures.

      In addition to finding cause for dismissal, section 1112(b) requires the Court to also find dismissal is in the best interests of creditors and the estate. Here, the Dismissal Procedures will provide the same 100% payout to creditors as proposed in the Plan, but on an expedited schedule. *See also In re Buffet Partners, L.P.*, 2104 WL 3735804 *3 (Bankr. N.D. Tex., July 23, 2014) (Approving dismissal where other option of conversion or plan confirmation "would add significant and unnecessary time and expense").

///

### C. The Dismissal Procedures Comply with the Guidelines.

The Dismissal Procedures also comply with the Court's Guidelines. They call for payments to creditors in accordance with the priority scheme of the Bankruptcy Code. *See* Guidelines B.1 and 2; *see also In re KG Winddown, LLC et al.*, 626 B. R. 739 (Bankr. S.D.N.Y. 2021). The Dismissal Procedures also include a procedure for resolving claim objections prior to dismissal and closing of the case. *See* Guideline B.4. The Dismissal Procedures likewise contain a procedure for the allowance of the Subchapter V Trustee's administrative claim. *See* Guideline B.5 *see also In re William M. Lansdale*, Case No. 8:09-bk-22982-ES (Bankr. C.D. Cal., March 23, 2015) (Dismissing case following settlement subject to payment of claims, professional fees, and trustee fees among other things). The Dismissal Procedures do not deviate from the Bankruptcy Code or Guidelines.

### D. Sections 349(b) Allows the Court to Order the Dismissal Procedures.

Further, the Court is authorized by Bankruptcy Code section 349(b) to include such Dismissal Procedures as set forth above and allowed by the Guidelines. While dismissal generally restores all property rights, as far as practicable, to the positions they occupied at the commencement of the case, bankruptcy courts in the Ninth Circuit nevertheless retain subject-matter jurisdiction after a case is dismissed over orders entered before the dismissal and to dispose of ancillary matters that are not otherwise moot. *Pavelich v. McCormick, Barstow et al. (In re Pavelich)*, 229 B.R. 777, 780-81 (BAP 9th Cir. 1999); *Lawson v. Tilem (In re Lawson)*, 156 B.R. 43, 46 (BAP 9th Cir. 1993). Additionally, section 349(b) of the Bankruptcy Code "expressly reserves to the bankruptcy court 'the power to alter the normal effects of the dismissal of a bankruptcy case is cause is shown' to protect rights acquired in reliance of the case." *In re County of Orange*, 183 B.R. 594, 609 (Bankr. C.D. Cal. 1995) *citing In re Pockington*, 21 B.R. 199, 202 (Bankr. S.D. Cal. 1982). For each of these reasons, the requested Dismissal Procedures comply with Bankruptcy Code section 349(b) and Ninth Circuit caselaw.

### VI. NOTICE

Notice of this Motion will be provided to all creditors (including the secured creditors with interest in the Property), the Office of the U.S. Trustee, the Subchapter V Trustee, and

those persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice is required. No prior request for the relief sought in this Motion has been made by the Debtor.

**VII. CONCLUSION**

For the above-stated reasons, Debtor respectfully requests that the Corut issue an order, substantially in the form as the attached Exhibit A, dismissing this case, approving the Dismissal Procedures, and granting such other and further relief as it may deem appropriate.

Dated: October 10, 2023          FINESTONE HAYES LLP

By:    */s/ Stephen D. Finestone*
       Stephen D. Finestone
       Counsel for Debtor Captain Corporation

# Exhibit A

Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CAPTAIN CORPORATION,<br><br>Debtor and Debtor-in-Possession. | Case No. 23-30421<br><br>Chapter 11, Subchapter V<br><br>**ORDER APPROVING MOTION TO DISMISS CHAPTER 11 CASE AND DISMISSAL PROCEDURES** |

The Court having considered the *Motion to Dismiss Chapter 11 Case* (the "Motion"), together with the supporting pleadings filed and the arguments of counsel, and good cause appearing,

IT IS HEREBY ORDERED that:

1. The Motion is granted.

2. The Debtor is authorized to implement the Dismissal Procedures as set forth in the Motion and to make the payments described therein.

3. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this order.

4. All orders entered in this bankruptcy case shall remain in full force and effect following the dismissal.

5. A separate Order of Dismissal will be entered upon confirmation by Debtor that the Dismissal Procedures have been completed.

** END OF ORDER **